MONTREAL COTTON AND WOOL WASTE COMPANY, LIMITED,
*vs.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

Suffolk. October 20, 1927. — November 23, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Contract*, Construction, Performance and breach. *Conflict of Laws. Sale*,
Delivery. *Practice, Civil*, Findings of fact by judge.

A corporation having a usual place of business in Canada made a contract
in writing for the sale to a corporation having a usual place of business
in Connecticut of certain bales of rags by numbers, and the purchaser
gave a bond signed by a surety company conditioned upon its perform-
ance of the contract. The contract expressly provided that it was
"signed in duplicate in Montreal . . . and for convenience sake it is
sent to the Purchaser to sign at Meriden [in the State of Connecticut],
but the completion of the contract is at Montreal, the Head Office of
the Vendor Company." An action upon the surety company bond was
heard by a judge without a jury upon a report by an auditor and other
evidence. There was evidence that all shipments of rags under the
contract were made and invoiced, and all bills were made out to, and
drafts therefor were paid by, a corporation, the majority of whose stock
was owned by the purchaser, and it was found by the auditor to have
been treated as a subsidiary or department of the purchaser. A dispute
arose between the parties as to the quality of rags in the bales, and the
purchaser refused to accept further deliveries. The judge found for
the plaintiff. *Held,* that
   (1) The interpretation and application of the contract were governed
by the law of Canada;
   (2) A finding was warranted that shipments by the plaintiff to the
purchaser's subsidiary were understood to be and were accepted as
deliveries to the purchaser;
   (3) The questions, whether there had been anything more than an
unintentional misdescription or mismarking of the bales in the shipment
complained of for which the plaintiff upon notice of the mistake agreed
to reimburse the buyer, and whether the plaintiff had materially failed
to deliver bales in accordance with the entire contract which included
rags of various grades and prices, were questions of fact and not of law
upon which the judge's general finding for the plaintiff was conclusive.

CONTRACT upon a bond. Writ dated December 10, 1920.

In the Superior Court, the action was referred to an auditor.
Material findings by the auditor are stated in the opinion.
The action was heard upon the auditor's report and other
evidence by *Weed*, J., without a jury.

At the close of the evidence, the defendant moved that upon all the evidence the court find and rule as a matter of law that the plaintiff could not recover, and asked the judge to rule as follows:

"1. On all the evidence in this case the plaintiff cannot recover.

"2. As a matter of law the Ayer-Kempton Corporation has not broken any contract between it and the plaintiff.

"3. There is no evidence in this case that the Ayer-Kempton Corporation has broken the contract between it and the plaintiff.

"4. There is no evidence in this case that the plaintiff did anything towards carrying out the contract between it and the Ayer-Kempton Corporation.

"5. The defendant cannot be held liable for any matters arising in connection with transactions and dealings between the Ayer-O'Connell Company and the plaintiff.

"6. If the Ayer-O'Connell Manufacturing Company undertook to carry out the contract between the Ayer-Kempton Corporation and the plaintiff, whether with or without the consent of the Ayer-Kempton Corporation, the defendant cannot be held liable for anything that transpired in the course of the dealings and negotiations between the Ayer-O'Connell Company and the plaintiff.

"7. There is no evidence in this case that the defendant ever consented to the carrying out of the contract between the Ayer-Kempton Corporation and the plaintiff by the Ayer-O'Connell Company.

"8. If the Ayer-O'Connell Company undertook to carry out the terms of the agreement between the Ayer-Kempton Corporation and the plaintiff, the defendant cannot be held liable for anything occurring in the course of the transactions and dealings between the Ayer-O'Connell Company and the plaintiff, unless it had expressly agreed to the carrying out of said contract by the Ayer-O'Connell Company.

"9. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-

Kempton Corporation and the plaintiff, then on all the evidence in this case all questions concerning the performance of the contract or the rights of the parties in connection therewith are governed by the laws of the State of Connecticut.

"10. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, then on all the evidence in this case the title to the shipments of goods by the plaintiff to the Ayer-O'Connell Company passed to the Ayer-O'Connell Company in the State of Connecticut.

"11. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, then on all the evidence in this case the title to said goods shipped under drafts drawn on the Ayer-O'Connell Company did not pass at the point of delivery in Montreal in spite of the provisions in the contract that the goods should be shipped F. O. B. Montreal, but passed at the time and place of the payments of said drafts, to wit, Meriden, Connecticut. (See *Libby* v. *Ingalls*, 124 Mass. 503, and § 20 of the sales act.)

"12. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, then on all the evidence in this case the contract was to be performed in the State of Connecticut and, therefore, all questions arising in connection with its performance are governed by the law of that State.

"13. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, then on all the evidence in this case the Ayer-O'Connell Company had a right

of inspection which was a condition precedent to the passing of title.

"14. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, then on all the evidence in this case the Ayer-O'Connell Company had a right to inspect the goods, said inspection being a condition precedent to the passing of title, and if said inspection was intended to take place at Meriden in the State of Connecticut, then the contract is governed by the laws of the State of Connecticut.

"15. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, then as a matter of law the instalments of goods shipped by the plaintiff to the Ayer-O'Connell Company during July were so defective as to justify the Ayer-O'Connell Company in refusing to go on with the contract.

"16. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with the negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, there is no evidence in this case that the plaintiff fulfilled all the terms of the contract and therefore it is not entitled to recover."

"18. If, as a matter of law or fact, the defendant can be held liable for anything arising in connection with the negotiations and dealings between the Ayer-O'Connell Company and the plaintiff, in carrying out the contract between the Ayer-Kempton Corporation and the plaintiff, then as a matter of law the plaintiff cannot recover because it did not use reasonable diligence to avoid any damages arising as a result of any alleged breach of the contract by the Ayer-O'Connell Company."

2A. "If the contract entered into between Ayer-Kempton Corporation and the plaintiff was not a contract for the delivery of goods by instalments, it was a contract entire in its origin, but divisible in its performance.

3A. "If the plaintiff made deliveries to the Ayer-O'Connell Company, and if the rights of the Ayer-O'Connell Company in connection therewith are governed by the contract between the Ayer-Kempton Corporation and the plaintiff, and if such deliveries were made in separate carloads at different times, then, if the third and fourth shipments, or both, were materially defective in quality as to the goods contained therein, the Ayer-O'Connell Company had a right to repudiate the contract in its entirety."

The judge denied the motion, refused to rule as requested, and found for the plaintiff in the sum of $3,994. The defendant alleged exceptions.

*R. B. Owen,* for the defendant.

*A. E. Whittemore,* for the plaintiff.

BRALEY, J.  It appears in the record that the plaintiff and vendor and the Ayer-Kempton Corporation, the purchaser, on January 10, 1920, entered into the following contract.

"It is hereby agreed between both parties that the Vendor has sold to the Purchaser, and the Purchaser has purchased from the Vendor, all the following numbers as seen by the Purchaser at Montreal on Jan. 8th, 1920, at the following prices, terms, and conditions. The Purchaser agrees to take all that the Vendor received from its Mills during 1920 and what it has in stock at the present moment of these numbers. All bales to be packed in gunny bagging. All prices are f.o.b. Montreal. The Vendor is to ship in quantities to suit itself, but in carloads wherever possible as accumulated. No complaints are to be made by the purchaser as to quality, unless any number should be misclassified. The purchaser agrees to pay all the Vendor's demand drafts attached to B/L as drawn on the Purchaser whenever these drafts are presented, and not to hold drafts for arrival of goods. These demand drafts are also to be paid in U. S. currency. Shipments are to begin as soon as possible and the Vendor will start making shipment at once.

| #4006 | 16½c per lb. |
|-------|-------------|
| 4008 | 15c ,, ,, |
| 4010 | 8c ,, ,, |
| 4004 | 35c ,, ,, |
| 510 | 25c ,, ,, |
| 515 | 15c ,, ,, |
| 6266 | 15c ,, ,, |
| 4012 | 25c ,, ,, |
| 220 | 7c ,, ,, |
| 6286 | 18c ,, ,, |

"No quantities are guaranteed, it being the purport of this Contract that the Purchaser is to take all of these numbers tendered to it by the Vendor. Last shipment to be made as early as possible in January 1921 to complete what the Vendor receives on its contract with its Mills up to Decr. 31/20. While the Vendor has furnished the Purchaser with the approximate quantities it received in 1919, no quantities are guaranteed of any of these numbers, but the Vendor will ship all that it receives from its Mills to the Purchaser during 1920.

"The Purchaser also undertakes and binds itself to provide the Vendor with a Fidelity Bond at once for $3,000. for the faithful performance and carrying out of this Contract.

"This contract is therefore signed in duplicate in Montreal this Tenth day of January, 1920, and for convenience sake it is sent to the Purchaser to sign at Meriden, but the completion of the contract is at Montreal, the Head Office of the Vendor Company."

The contract was made in Montreal, Canada, where it was to be performed, and the law of Canada governs its interpretation and application in the case at bar. *Hall* v. *Chase*, 143 Mass. 129. *Nashua Savings Bank* v. *Sayles*, 184 Mass. 520. *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89, 95. The defendant as surety executed and delivered to the plaintiff January 19, 1920, a bond stipulating that if the principal named in the contract, the Ayer-Kempton Corporation, "shall faithfully perform said contract according to its terms, convenants and conditions then this obligation shall be void, otherwise to remain in full force

and effect." And the present action is brought to recover damages for an alleged breach of the bond caused by the failure of the principal to perform its contract with the plaintiff.

It having been decided that the contract and bond were valid, the case was referred to an auditor to determine whether there had been a breach of the conditions of the bond, and if so to assess damages. G. L. c. 235, §§ 9, 10. *Fisk* v. *Gray*, 100 Mass. 191. The auditor having found for the plaintiff, the case upon the coming in of his report was heard without a jury on the report, and additional evidence introduced by the parties. The judge found for the plaintiff.

It is contended by the defendant as matter of law, that its first request, that upon all the evidence the plaintiff cannot recover, which covers generally all the questions raised by the remaining requests, should have been given. It is urged in argument that, unless there was evidence warranting a finding that the purchaser failed to perform the contract, the plaintiff cannot recover. The auditor finds that all shipments of rags under the contract were made and invoiced, and all bills were made out to, and drafts therefor were paid by, the Ayer-O'Connell Manufacturing Company, the majority of its capital stock being held by the Ayer-Kempton Corporation. We shall hereinafter refer to the Ayer-Kempton Corporation as the Corporation, and to the Ayer-O'Connell Manufacturing Company as the Company. During the period named in the contract the officers of the Company and of the Corporation were the same. The Company in carrying on business was treated and used as a subsidiary department of the Corporation. The headings of the letters used in correspondence concerning business transactions by the Company were in these words, "The Ayer-O'Connell Manufacturing Company Division of the Ayer-Kempton Corporation, Manufacturers of Platers Supplies, Meriden, Conn. . . . " and U. S. Ayer, the president of the Corporation and of the Company on or about January 8, 1920, had visited the plaintiff's place of business and examined bales of the grades of rags in which the plaintiff dealt. The auditor finds that so far as the business of the two

corporations was concerned the Company was treated as a subsidiary or department of the Corporation. If these conditions are considered with the correspondence and course of dealing between the parties as shown by the record, a finding was warranted that shipments by the plaintiff to the Company were understood to be, and were accepted as, deliveries to the Corporation. *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345, 355.

The shipments began on or about January 24, 1920, and ended on or about July 16, 1920. But no further shipments were made because of the refusal of the Company to accept and pay for goods after July 16, 1920. This condition of affairs led to a lengthy correspondence in which some possible adjustment was discussed and counsel were consulted by the parties. The controversy was closed by a letter of the Company to the plaintiff dated October 22, 1920, in which the Company stated that, having been advised by counsel that no obligation binding on the Corporation existed because the execution of the contract was unauthorized, "we will refuse to accept any further shipments or drafts," and the plaintiff replied October 25, 1920, threatening suit and that the matter would be referred to its counsel.

The refusal to accept further shipments was a breach of the contract, entailing a loss to the plaintiff in excess of the penal sum of the bond. It is alleged in the answer however that the goods shipped were below the standard, grade and classification stipulated in the contract, and were in no way suited or adapted to the purposes for which they were to be used of which the plaintiff well knew, and that, the plaintiff having failed to perform the contract, the defendant's obligation on the bond had ceased. The plaintiff wrote the Company August 25, 1920, saying in part, "We expect to have a carload of rags to ship you some time next week. There will be anywhere from 40 to 50 bales in this carload, so kindly make your financial arrangements accordingly." The Company on August 25, 1920, wrote the plaintiff that "in the car shipped us on July 30th, we find that in the twelve bales No. 4006, which is classified as nothing but clean, Light Prints,

contained light prints, soiled bleached, clean bleached, and unbleached, clean and soiled gray headings.   Therefore, we are unable to use these goods to advantage, there being considerable waste on same.   Also, the eleven bales 4008 classified as Clean Light Prints contain dark colored prints, oily rags, soiled prints and also soiled plain colored rags.   The writer does not know whether this is your packing or mill packing, but they are absolutely not up to specifications of the goods as purchased from you.   We would advise holding these goods, so that one of your representatives can call here and examine them carefully.   Please do not make another shipment of material to us until this matter is satisfactorily adjusted."   The Company again wrote the plaintiff on August 28, 1920, stating in substance that its sheds "according to our Purchasing Department, [are] filled to the limit with material which has arrived during the past month. We also have fifty or sixty bales of your material which our Purchasing Department . . . has already written you about stating that they are not the class of goods we purchased. We also understand they have stated they do not desire a car shipped until an adjustment has been made or until your representative has seen the bales we now have.   It would not be advisable for us to accept more material which is incorrectly packed . . . .   You certainly want to have us complete the contract, and we will not be able to do so if some time or other a demand is slapped on us for something which we cannot meet that day.   Two days later it might be easy for us."

The plaintiff in reply stated that number 4006 should be nothing but clean light prints and number 4008 clean dark prints and asked the Company "to throw out any other matter in the bales" and that the plaintiff "would make good at invoice prices," and asked that the goods be sorted. The plaintiff also notified the Company "of a possible shipment . . . of another carload within a few days."   The Company in October, 1920, sorted the bales tagged as number 4006 and 4008 but the results of the examination were not disclosed to the plaintiff until put in evidence before the auditor who reports that the defendant claimed such mis-

descriptions on the part of the plaintiff constituted breaches of the contract relieving the Corporation from liability.

The defence therefore is in substance that, by its antecedent failure to perform the contract, the plaintiff has no cause of action. *Bowen* v. *Kimbell,* 203 Mass. 364. *Sipley* v. *Stickney,* 190 Mass. 43. *Anglim* v. *Sears-Roebuck Shoe Factories,* 255 Mass. 334. But the questions, whether there had been anything more than an unintentional misdescription or mismarking of the bales in the shipment complained of which the plaintiff upon notice of the mistake agreed to reimburse the buyer for, and whether the plaintiff had materially failed to deliver bales in accordance with the entire contract which included rags of various grades and prices, were questions of fact and not of law upon which the judge's general finding for the plaintiff is conclusive. *Roach* v. *Lane,* 226 Mass. 598, 605. *Boston Supply Co.* v. *Rubin,* 214 Mass. 217, 220. *John B. Frey Co. Inc.* v. *S. Silk, Inc.* 245 Mass. 534.

We have already said that the contract was made at Montreal, and in so far as material the law of Canada controls, and not, as the defendant contends, the law of the State of Connecticut, where the Corporation by its subsidiary carried on business.

The denial of all the requests reveals no reversible error of law and the exceptions must be overruled.

*So ordered.*