CLARENCE R. EDWARDS & others, *vs.* CARLOTTA COCKBURN.

Suffolk. December 7, 1927.— June 13, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Probate Court,* Motion to strike claimant's name from record, Appeal, Report of findings by judge, Findings by judge, Exceptions, Requests and rulings. *Evidence,* Admitted without objection, Presumptions and burden of proof, Of paternity, Of marriage. *Jurisdiction. Judgment. Adoption. Illegitimacy.*

After a hearing of a petition by a judge of probate, where a stenographer had been appointed under G. L. c. 215, § 18, the judge passed upon requests by the parties for rulings, filed a document entitled "Memorandum of Decision and Voluntary Report of Material Facts," and ordered a decree for the petitioner. The respondent requested a report under G. L. c. 215, § 11. The judge declined to make such a report, ruling that the voluntary report of material facts stood on the same footing and had the same effect as a report of findings of fact made under G. L. c. 215, § 11. *Held,* that the ruling by the judge was right.

During the course of the hearing in a probate court of a petition that an appearance of a respondent to contest the allowance of a will be struck from the record, counsel agreed that any evidence introduced at certain previous hearings that was pertinent and material to the respondent's contention should be considered. It appeared that, during such previous hearings, the will of the alleged testator "was received in evidence, without objection, as the statement of a deceased person." Later in the hearing, objection was raised to such admission of the will in evidence and for the first time the respondent excepted. At the close of the evidence, the respondent by requests for rulings sought to raise the question, whether the will should have any probative force, or whether it should be struck from the record. The rulings were refused. *Held,* that

(1) The exception came too late;

(2) The will, having been admitted without exception, was entitled to its probative force;

(3) The rulings properly were refused.

At the hearing in a probate court of this Commonwealth, where an issue was, whether a respondent was a child of a brother of a decedent, a decree of a court of the then Territory of Arizona, permitting one not alleged to be related to the child to adopt the respondent upon his petition alleging that the decedent's brother was the respondent's father, was of no binding force to establish paternity as to the decedent's brother, where it appeared that in that petition he was described as "in New York" and it did not appear that he ever had any notice of the adoption proceedings.

At the hearing in a probate court of a petition to strike from the record an appearance to contest the allowance of a will, entered by a woman who alleged that she was a child of a brother of the decedent and who, if she had been such child, would have been next of kin of the decedent, the burden of proof of facts essential to establish such kinship was upon the respondent.

At the hearing above described, there was much conflicting oral testimony, testimony by deposition, and documentary evidence, all of which was taken by a stenographer appointed under G. L. c. 215, § 18, and the judge made and reported specific findings against the contentions of the respondent and by his order a decree was entered striking her appearance from the record. The respondent appealed. *Held*, that

(1) The decree should not be reversed unless there was no substantial evidence to support it;

(2) It was not for this court to say which witnesses who testified orally the trial judge should believe, or what weight should be given to the evidence of the witnesses who testified by deposition, independently of the oral evidence presented;

(3) Upon a careful review of the evidence, findings by the judge were not plainly wrong and must stand;

(4) The decree was affirmed.

Although evidence of repute is admissible under G. L. c. 207, § 47, to prove marriage, the weight of such evidence is to be determined in a great degree by the standards of living and the character of the poeple in the community.

Under G. L. c. 207, § 47, mere cohabitation of a man and woman is not evidence of marriage.

A statute of Arizona, Comp. Laws of Arizona Territory (1887) c. 29, § 8, Par. 1890, in force in 1881, relating to the legitimating of an illegitimate child upon acknowledgment by the parents, even if valid, which was not decided, was *held* to be inapplicable upon the issue above described, since the judge, upon evidence warranting his findings, had found that the respondent was not proved to be the child of the decedent's brother.

PETITION, filed in the Probate Court for the county of Suffolk on September 29, 1924, for proof of the will of Lotta M. Crabtree, late of Boston.

On September 30, 1924, special administrators of the estate were appointed.

An appearance was entered on behalf of Carlotta Cockburn on November 5, 1924. On November 17, 1924, the special administrators filed a petition that the appearance of Carlotta Cockburn be struck from the record. The petition was heard by *Prest*, J. A stenographer was appointed under G. L. c. 215, § 18, to take the evidence. Material evidence and findings by the judge are described in the opinion. At the close of the evidence, the respondent asked for and the judge refused the following rulings, among others:

"23. The will of Lotta Crabtree cannot be used or considered by the court for any purpose upon this record.

"24. The will of Lotta Crabtree has not been proved, is the ultimate issue in this case and ought not to be considered in any way, shape or form by the court in passing upon the evidence in this case.

"25. The will of Lotta Crabtree was improperly admitted in evidence and is now stricken from the record.

"26. It cannot even be used as the declaration of a deceased person because it has not been proved to be such and there was no evidence offered to so prove it, and no evidence warranting a finding that it was so proved."

The petition was allowed. The respondent appealed.

*L. Withington,* (*J. B. Sullivan* with him,) for the respondent.

*F. H. Chase,* (*R. P. Baldwin* with him,) for the petitioners.

Crosby, J. Lotta M. Crabtree died in Boston, September 25, 1924, leaving an instrument purporting to be her last will. Clarence R. Edwards and others, hereinafter referred to as the proponents, named as executors therein, filed a petition for the probate of her will in the Probate Court for the county of Suffolk. On November 5, 1924, Carlotta Cockburn, hereinafter referred to as the claimant, filed her appearance as a contestant of the will. On November 17, 1924, the proponents, as special administrators of the estate, filed a motion to strike her appearance from the record on the ground that she was not an heir at law or next of kin of Lotta M. Crabtree, hereinafter called the decedent. The issue presented by this motion was tried before the Probate

Court.   Much evidence was introduced by both parties in the form of oral testimony, depositions taken upon oral interrogatories, exhibits and other documentary evidence. The petition for probate of the will set forth the names and addresses of six persons, described as cousins of the decedent, as her only heirs at law and next of kin.   The decedent had a brother, John Ashworth Crabtree, who predeceased her.

The claimant contends that she is the legitimate daughter of this brother by reason of either an actual or a common law marriage with one Annie Leopold, and also by virtue of the legitimation of the claimant through his acknowledgment of her as his daughter, and that, accordingly, she is a niece and heir at law and next of kin of the decedent.   The judge of probate stated that on all the evidence he was not satisfied that John A. Crabtree was the father of the claimant; he allowed the motion to strike the claimant's appearance from the record, on the ground that she is not an heir at law and next of kin of Lotta M. Crabtree, and filed a "Memorandum of Decision and Voluntary Report of Material Facts."   The claimant appealed from a decree allowing the motion to strike her appearance from the record.   On April 2, 1927, she filed in the Probate Court a request that the judge report the material facts found by him in allowing the motion, and to include therein her requests for rulings of law, for findings of facts, and his disposition thereof.   The judge ruled that the voluntary report of material facts stands on the same footing and has the same effect as a report of findings of fact made under G. L. c. 215, § 11, and declined to make the report requested.   It also appears that the judge had previously passed upon all of the claimant's requests for rulings of law; that as to the request for findings of specific facts, he ruled he could not be required to make them and he denied them except so far as they appeared to have been set forth in his report of material facts.

The ruling that the findings voluntarily made stand on the same footing as findings made under G. L. c. 215, § 11, was correct.   *Cohen* v. *Nagle,* 190 Mass. 4.   *Howe* v. *Howe,* 199 Mass. 598, 601.   *Taylor* v. *Jones,* 242 Mass. 210, 216.   *Boston Safe Deposit & Trust Co.* v. *Wickham,* 254 Mass. 471, 473.

Eighty-seven contestants appeared in the Probate Court against the allowance of the will; "seven were withdrawn. In each of the remaining cases the proponents of the will filed a motion to strike out the appearance on the ground that the contestant was not an heir at law. And after hearings each motion has been allowed except in the present case." It was found by the judge, and it was agreed by counsel in open court, that any evidence introduced in the previous hearings, above referred to, that was material or pertinent to the claim of kinship of the claimant Carlotta Cockburn, should be considered as in evidence in the case at bar. We are of opinion that upon examination of the record this finding was warranted. It would seem that the only evidence so previously introduced was at the hearing upon the claim of Ida M. Blankenburg. The judge stated that "During said hearings the said will of the testatrix was received in evidence, without objection, as the statement of a deceased person." At his suggestion to counsel for the proponents, the petition for the probate of the will and the will itself were offered and admitted in evidence, without objection. When the will was so admitted the claimant was represented by counsel, and if it were objected to, that was the time an exception should have been taken to its admission. After the proponents of the will had rested and during the offering of testimony in behalf of the claimant, the question of the admission of the will was discussed by counsel and the judge, and then for the first time the claimant excepted to its admission. The mere fact that a judge believes an exception has been saved and he allows a bill of exceptions is not enough to establish an exception if the record does not show that one was taken at the proper time. To constitute a valid exception it must be seasonably saved, or the rights of the other party cannot be affected. *Herrick* v. *Waitt*, 224 Mass. 415, 417. *Riley* v. *Brusendorff*, 226 Mass. 310, 313. *Lockhart* v. *Ferguson*, 243 Mass. 226, 230. As the record fails to show that a valid exception was taken to the admission of the will in evidence, we need not consider whether upon any ground it was admissible.

The rulings of law requested on page 20 of the record were

denied rightly because the will, having been admitted without exception, was entitled to its probative force; these requests in substance were that the will be struck from the record. *Hubbard* v. *Allyn*, 200 Mass. 166, 171.  *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 27.

Request 26 was rightly denied; it related to matters which ought to have been raised when the will was offered in evidence, and could not be raised later.  The request must be taken as a whole, and not as a mere request for a limitation of the scope and applicability of the evidence.

The claimant introduced evidence tending to show that John A. Crabtree, brother of the decedent, met the claimant's mother, Annie Leopold, in the east, and afterwards, in 1878 or 1879, in California there was a ceremonial marriage between them; that after their marriage they accompanied one Ed Bullock, who had formerly kept a livery stable in San José, California, from San Francisco or San José to Tombstone, Arizona, in 1879; that the claimant, who was born in Tombstone March 19, 1881, was the daughter of Crabtree and Annie Leopold; that Crabtree acquired a domicil in Tombstone, and after the claimant's birth he acknowledged her as his child.  The claimant further contends that even if she were his illegitimate child she was made legitimate by virtue of a statute of Arizona, and thereby became heir at law and next of kin of the decedent.  The claimant, however, introduced evidence of declarations of Crabtree, Annie Leopold and Bullock to show such marriage, and that the claimant was the child of Crabtree and Annie Leopold.  She also introduced other evidence tending to show the marriage, her parentage, that Crabtree and Annie Leopold were reputed to be married to each other, and that the claimant was reputed to be their child.  The proponents, on the other hand, introduced evidence to show that there never was any ceremonial marriage between Crabtree and Annie Leopold; that he did not meet her in California; that he did not go with her and Bullock to Tombstone, Arizona, in 1879, but that he went there alone from New York City in the fall of 1880; that he did not meet her before that time, and therefore could not have been the claimant's father.

The judge of probate found that there was no satisfactory proof that Crabtree was ever married to Annie Leopold by a ceremony, or that he had contracted a marriage with her at common law; that the claimant had failed to prove that Crabtree was domiciled in Arizona; that there was no credible evidence to warrant a finding that Crabtree and Annie Leopold lived in Tombstone together previous to January, 1881; and he stated: "On all the evidence I am not satisfied that Jack arrived in Tombstone before the fall of 1880; and I find that he left Tombstone about the middle of November, 1881; and that he was not there continuously from the fall of 1880 to November, 1881."

The judge made many other findings and rulings, including the following: "I rule that the burden of proof is on the claimant to show by a fair preponderance of the evidence that Jack acknowledged the claimant as his child. And I find and rule that the claimant has not sustained the burden of proof. And on all the evidence I am not satisfied that Jack is the father of the claimant; I am not satisfied that he acknowledged the claimant as his child, and I find the claimant is not the legal heir of John A. Crabtree."

There was evidence tending to show that Crabtree left Tombstone in November, 1881; that the claimant's mother deserted her when she was a baby, going to Ed Bullock and then running away with one Argyle, whom she afterwards married. She died September 27, 1909, in Seattle, Washington. After the claimant was deserted by her mother, there was evidence that she was cared for by Ed Bullock, with whom Crabtree had been engaged in the livery business in Tombstone; that Bullock, on June 3, 1884, petitioned the Probate Court of Pima County, Arizona, for adoption of the claimant. In the petition she is described as Lottie Crabtree, daughter of J. A. Crabtree and "Annie . . ."; that "said minor has been abandoned by its mother and its father . . . and is now in the care of petitioner." Notice on the petition only required that it be posted in three public places in the county at least five days before June 10, 1884. The judge found that neither the mother nor Crabtree was personally notified by Bullock of the pendency of the peti-

tion. A decree of adoption was entered on the petition. The judge ruled that as to the paternity of the child it was not binding upon John A. Crabtree. Thereafter, on April 2, 1892, Bullock took the claimant to St. Joseph's Orphans Home in Tucson, Arizona. The record of the home shows that she was born March 19, 1881, that she was a "half orphan"; that she was an adopted child and was sent to Bullock January 1, 1893. The judge found that it was a fair inference that this information was given the home by Bullock who brought the child there and also took her away.

We are of opinion that the decree of adoption was of no binding force or effect so far as Crabtree was concerned, as it does not appear that he ever had notice of the adoption proceedings and is described in the petition as "in New York." The court was without jurisdiction as to him. *Bissell* v. *Briggs,* 9 Mass. 462. *Carleton* v. *Bickford,* 13 Gray, 591. *Reyer* v. *Odd Fellows' Fraternal Accident Association of America,* 157 Mass. 367, 369. The decree was valid so far as it fixed the legal status of the child and its adopting parent.

There was evidence that Crabtree married Annie E. Harris in New York on November 24, 1899; that by the marriage a child was born that predeceased its parents; that the marriage was recognized by Crabtree's mother, and by the decedent and various other relatives; that Crabtree and his wife lived in Roxbury in this Commonwealth after the marriage as husband and wife. In the certificate of death of Annie E. Crabtree it is recited that she died October 18, 1918, in Braintree, and that she was married and was born in Boston. Crabtree, about August 1919, went to Charleston Township, North Carolina, to live, and while there he met Andrew Thomas Lollis, a farmer, who lived near him. About November 1, 1919, he went to live with Lollis; he told Lollis his wife died the year before and that he had no family, and he wanted to adopt a son of Lollis, who was about fifteen years old, but Lollis would not part with the boy. On January 29, 1920, Crabtree died in Lollis's house, and his body was sent to New York and was buried there at the request of the decedent. The judge found that Lotta M. Crabtree was the last of this Crabtree family.

To recite or even to refer to all the evidence upon which these findings were made, comprising as it does several volumes of transcript of oral testimony, numerous depositions, many exhibits, and a large amount of documentary evidence, would not be practicable. The judge correctly ruled that the burden of proof rested upon the claimant to show that she was the heir at law and next of kin of the decedent. If she failed to sustain that burden the motion to strike her name from the record was rightly allowed. *Finer* v. *Steuer*, 255 Mass. 611, 616, 617.

If the decree striking the claimant's appearance from the record is to be reversed, it must appear to this court that there was no substantial evidence to support it. In suits in equity, where an appeal has been taken from a final decree, "The rule there is that it is the duty of this court to examine the evidence and decide the case according to its judgment, giving due weight to the finding of the judge. Yet his decision will not be reversed if warranted by any reasonable view of the evidence, nor unless plainly wrong." *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 547. That rule is applicable to the case at bar. *Rubenstein* v. *Lottow*, 223 Mass. 227, 228. *Townsend* v. *Townsend*, 243 Mass. 401, 404. *Finer* v. *Steuer, supra*, page 622. The rule that, where the evidence is given orally and there is conflict in the testimony, the decision of the judge who saw the witnesses will not be set aside unless clearly erroneous, does not apply to cases where the evidence is wholly documentary. In such cases this court is in the position of the trial judge with respect to the inferences of fact to be drawn from the evidence and will decide the case according to its judgment, giving due weight to the finding of the judge. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143. *Swan* v. *Justices of the Superior Court, supra*. *Nichols* v. *Atherton*, 250 Mass. 215, 217. It follows that this court is not, as the claimant argues, in the same position as was the probate judge "with respect to every material fact in the case." The case is to be decided upon the entire evidence, *Finer* v. *Steuer, supra*, but it is not for this court to say which witnesses who testified orally the trial judge should believe, or what weight should

be given to the evidence of the witnesses who testified by deposition, independently of the oral evidence presented. *Needham Trust Co.* v. *Cookson*, 251 Mass. 160.

The judge made the following and other findings: that John A. Crabtree, who was sometimes called Jack, seems to have been born in California about 1856; that there is no member of this Crabtree family now living unless it be the claimant; that in 1876 Mary A. Crabtree, mother of Jack, and her daughter Lotta, had their domicil in New York; that Jack worked in Fall River, in this Commonwealth, in 1876, and left there between May of that year and May 1877, going to his mother and sister in New York, where he remained for some time.    The proponents introduced evidence tending to show that after leaving Fall River, Jack was employed in New York for a while; that he was with his mother and Lotta in Boston about April 19, 1879, and with them in New York on May 29, 1880, and also on September 6, 1880; that he was with them in Philadelphia between April 4 and April 9, 1881; that he met them in Providence, Rhode Island, about December 8, 1881; that the first time he arrived in Tombstone, Arizona, was in the fall of 1880.    Although the claimant contended that Crabtree and Annie Leopold were married in California in 1879, and during the same year went with Ed Bullock to Tombstone where the claimant was born on March 19, 1881, the judge states: "I find that Jack did not meet Annie in California and did not go with her to Tombstone, but I do find that Jack was in Tombstone in the fall of 1880, and was there off and on until about November 18, 1881 . . . . There is no credible evidence to warrant a finding that Jack and Annie lived together in Tombstone previous to January, 1881 . . . On all the evidence I am not satisfied that Jack arrived in Tombstone before the fall of 1880."    He also found that in 1881 Crabtree, as a "squatter," acquired a lot of land in Tombstone and built a cheap shack or one-room cabin where for a time he lived with the claimant's mother; that he called the doctor for her when the claimant was born, and after her birth he continued to live there for some time; that he left Tombstone in November, 1881, and never returned.    Upon the questions, whether Crabtree was

in California in 1878 or 1879, and when he went to Tombstone, Arizona, as to the paternity of the child and whether he was reputed to be her father, and upon many other issues raised at the trial, the evidence was conflicting, and the judge's findings thereon cannot be disturbed.

The decedent was an actress of distinction and gave theatrical performances in many cities in the United States during a period covering several years. At the hearing before the probate judge many witnesses testified orally and by deposition. These witnesses resided in different states, including New York, California, Arizona and Missouri.

Upon the question of the paternity of the claimant, the proponents introduced the following and other evidence: Clement D. Bainbridge testified that he knew the decedent, her mother and her two brothers, John and George; that he was a member of a theatrical company in which the decedent played in Boston during the week ending April 19, 1879; that John Crabtree was present at a performance given by the company during that week; that on May 29, 1880, the witness sailed for Europe on the steamship "Egypt," from New York, with Lotta and her mother; that John Crabtree was at the dock to see them off. The sailing of this ship on the above date was verified by the sailing notice introduced in evidence. This witness further testified that he, Lotta and her mother returned from Europe on the same ship, arriving in New York early in September of the same year, and that Crabtree was at the dock to greet his family. The return of the steamship "Egypt" was verified by the ship's manifest of September 6, 1880.

Elizabeth Ward Doremus testified that she was a playwright; that she was intimately acquainted with the decedent, her mother, and brother John; that she knew Lotta from the time she was eighteen or nineteen years old up to the time of her death; that she went to the steamer at the pier in New York, and saw Lotta and her mother off to Europe on the steamship "Egypt" on May 29, 1880; that she saw John Crabtree there helping his mother and sister off; that she met Lotta at the boat on her return from Europe on the steamship "Egypt" on September 6, 1880, and Lotta's brother

John was there and also met them. She further testified that she wrote to John A. Crabtree in New York in the summer of 1880 respecting the translation of one of her plays.

Louis S. Livesey testified that he was a cousin of the decedent; that he first knew the Crabtree family in San Francisco; that after his mother's death he was taken to New York by the decedent and her mother; that later, in 1876, Mrs. Crabtree got him a position in Fall River, in this Commonwealth; that at that time George and John Crabtree, brothers of the decedent, were also in Fall River, Jack being employed in the office of a cotton broker; that the witness remained there about a year and then went to New York; that he saw John Ashworth Crabtree in New York frequently; that John accompanied his sister Lotta on tours and visited her in various cities. This witness on cross-examination testified that from the first time he saw Crabtree until 1882, apart from meeting him in Fall River, he did not see him more than half a dozen times. It was for the judge to determine what weight should be given to the entire testimony of the witness. This witness further testified that in the fall of 1880 he met Crabtree in New York and went with him by ferry to the Erie Railroad, in Jersey City; that they went to the train shed and he "saw Ashworth [John A. Crabtree] on the train," the witness getting on the train himself; that Crabtree was going to Arizona; that in going to Jersey City from New York they left the foot of Chambers Street by ferry; that Crabtree had with him a bundle concerning which the witness stated: "I can describe it best by describing it as in [an] immigrant's bundle, mattress, blankets and several cooking utensils like a man going out west to rough it"; that on the trip over on the ferry boat Crabtree threw the bundle overboard; that this was the first time he knew of Crabtree going to that part of the country.

The judge was warranted in finding upon all the evidence that John A. Crabtree did not go to Arizona before the fall of 1880; that he was in Fall River in 1876 or 1877 and after his return from there he was in New York, and was seen there frequently by the witness Livesey, until he left for Arizona as above described. Although there was contrary

evidence produced by the claimant, the judge was not bound to believe that evidence. He found that the testimony offered by her was untrue in many instances and that in others it was inaccurate and unreliable.

The finding, that upon all the evidence the claimant had not sustained the burden of proving that John A. Crabtree was her father, was not plainly wrong and must stand.

As to the question of the domicil of John Ashworth Crabtree, father of Jack, there was evidence tending to show that he was born in England, was married there, and that he came to this country in the early fifties and went to California to seek his fortune after the discovery of gold in that State. It does not appear how long he remained in this country, but he returned to England, where he lived until his death many years later. There was no evidence that he ever became a naturalized citizen here or intended to change his domicil in England. The findings that his domicil was in England, that the domicil of his son, John Ashworth Crabtree, Jr., during his minority was that of his father, and that before the son left New York he was of full age, were justified by the evidence.

The finding of the judge that there never was a ceremonial marriage between Annie Leopold and Crabtree cannot be said to be clearly erroneous. There was no record of such a marriage produced, and the judge found that the evidence introduced in support of such a marriage either in San Francisco or elsewhere must be regarded as unworthy of belief. If, as found by him, Crabtree did not meet Annie Leopold in California and did not go with her to Tombstone, no marriage of the parties could have taken place as the claimant contends. It is found that, assuming common law marriages were recognized as valid in California and Arizona, there never was any such marriage between Crabtree and Annie Leopold. In this connection it is found that "There is much in the testimony of these witnesses for the claimant, taken as a whole, which leads one to distrust the reliability of their memories and there is not a little evidence that points to the element of suggestion or reconstruction. Again, there is a very considerable body of evidence on which the claimant's

case rests and that came in as statements of deceased persons, and much of that evidence is in the second degree." These findings of fact are not without evidence to support them. It was said in *Drew* v. *Drew*, 250 Mass. 41, at page 44, "It was for the trial judge to determine where the truth lay, having in mind the burden of proof resting upon the libellant." Although that case was a libel for divorce, the rule there stated is pertinent to the present case. The finding that there was no common law marriage must stand.

G. L. c. 207, § 47, provides that "Marriage may be proved by evidence of an admission thereof by an adverse party, by evidence of general repute or of cohabitation of the parties as married persons, or of any other fact from which it may be inferred." While evidence as set forth in the statute is admissible to prove marriage, it is not conclusive, and may be rebutted by other evidence tending to show that no marriage in fact was consummated between the parties. Mere cohabitation of a man and woman alone is not, under the statute, evidence of marriage. They must so cohabit "as married persons," and not live together merely in illicit intercourse. The trial judge found that Crabtree and Annie Leopold "did things that strongly negative any common law marriage, and negative any acknowledgment by him of Annie as his wife and the claimant as his daughter." He further found that "convincing evidence that they were not husband and wife is found in their own conduct. His conduct in leaving her and her child and his actions thereafter showing that he did not regard either of them as having any lawful claim upon him, and her abandonment of her child and her conduct with Bullock," and her marriage to Argyle, without ever making a claim against Jack for support, "denote that the real marriage relation did not exist."

In view of these findings which, upon the evidence, we cannot say were unwarranted, it is plain that no marriage was proved under the statute. The decision in *Finer* v. *Steuer*, 255 Mass. 611, and other cases cited in the claimant's brief in this connection, are not at variance with what is here decided. The mere statement of Crabtree that he was married does not conclusively establish that relation. The

question, whether these parties were married, was one of fact to be proved from all the evidence and the reasonable inferences to be drawn therefrom. *Turner* v. *Williams*, 202 Mass. 500. The paper delivered to Annie Leopold, written by Dr. Giberson, who testified that he was present at the birth of the claimant, which reads: "Mrs. Crabtree Delivered of a girl baby Mar. 19, 1881, by Dr. N. S. Giberson," did not establish that Crabtree was married to the mother, or that he was the child's father, or that he acknowledged the child to be his. This paper was admitted in evidence, and there is nothing to show that it was not given the weight to which the judge believed it to be entitled. Although evidence of repute is admissible to prove marriage, the weight of such evidence is to be determined to a great degree by the standards of living and the character of the people in the community. There was evidence that, when Crabtree and Annie Leopold were living in Tombstone, many men and women were living there together who were not married, and that fact was generally known. In such circumstances evidence of repute that a man and woman who were living together were married might be entitled to less weight than would be given to similar evidence in a community where correct standards of conduct were more strictly observed.

It is the contention of the claimant that if Crabtree and Annie Leopold were not married, either ceremonially or by a common law marriage, and the claimant was born to them, although she would be illegitimate, if they acknowledged her as their own it would legitimatize her and she would be the legal heir of both parents under the law of Arizona. The statute upon which this contention is based is Comp. Laws of Arizona Territory (1887) c. 29, § 8, Par. 1890, in force in 1881, and reads as follows: "Either or both parents of an illegitimate child, or the father with the consent of his wife, or the mother with the consent of her husband, may acknowledge such child as his or their own, and such acknowledgment shall legitimatize such child, and such child shall from the time of such acknowledgment be the legal heir of the parent by whom it shall be so acknowledged." If we assume that this statute is valid, although its validity or con-

struction never has been passed upon by the Supreme Court of Arizona or by the Supreme Court of the United States, the claimant to bring herself within its provisions and establish her legitimacy must prove that she is the child of John A. Crabtree, and that he was domiciled in Arizona at the time of the alleged acknowledgment of her as his child. *Irving* v. *Ford,* 183 Mass. 448, 449. As to the foregoing facts necessary to be proved to make the statute applicable, the judge has found against the claimant.

We are not unmindful of the fact that there was evidence introduced by the claimant which tended to support all her contentions necessary to establish that she was a next of kin and heir at law of the decedent, but as we are unable to say that the controlling findings were without evidence to support them, or that they were clearly erroneous, they must stand. To hold otherwise would be to ignore the well established rule that such findings are conclusive if supported by the evidence and not plainly wrong. *Lindsey* v. *Bird,* 193 Mass. 200, 201. *Townsend* v. *Townsend, supra. Needham Trust Co.* v. *Cookson, supra. Finer* v. *Steuer, supra.*

We have examined the claimant's exceptions to the admission and exclusion of evidence. They need not be considered separately. None of them show reversible error.

The claimant made thirty-eight requests for rulings of which twenty-three were refused, and three were granted with qualifications. It is plain that most of them could not properly have been given by reason of the findings; those denied were denied rightly. It would serve no useful purpose to recite in greater detail the evidence upon which the findings were based; it is sufficient to say that there was evidence to warrant them.

It follows that the entry must be

*Decree affirmed.*