AMBROSE CASSIDY & another *vs.* SARAH L. TRUSCOTT & others.

ARTHUR D. HILL & others *vs.* AMBROSE CASSIDY & others.

Norfolk.    December 8, 1933. — September 12, 1934.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Descent and Distribution. Insane Person. Probate Court,* Jurisdiction, Motion to dismiss, Determination of heirs, Waiver.

The ancient rule of the law of England with respect to the descent of real estate to the effect that "on failure of lineal descendants, or issue, of the person last seised, the inheritance shall descend to his collateral relations, being of the blood of the first purchaser," never has been recognized in this Commonwealth, where descent of undevised land has been regulated by statute from very early times.

The devolution of the real estate held in fee and left undevised by an insane person never capable of executing a valid will is governed by the provisions of G. L. (Ter. Ed.) c. 190.

Upon the filing in a probate court, by certain persons claiming to be next of kin of an intestate decedent, of a "petition to amend list of heirs" as they appeared in the petition for administration, which had been allowed, those named as heirs and next of kin in the petition for administration filed a motion to dismiss which was in the nature of a demurrer, and the case was heard thereon and the petition "to amend" was dismissed. Upon appeal, it was *held,* that

  (1) The motion admitted only the facts well pleaded, but did not admit conclusions of law;

  (2) The underlying contention of the petitioners was made plain and no evidence was necessary;

(3) The case was properly heard upon the petition and motion to dismiss.

There is no procedure known to our probate practice for amending, on the petition of a stranger, the list of heirs and next of kin in a petition for administration after the appointment of an administrator has become effective.

The respondents in the petition "to amend" above described, by appearing in opposition to the petition and being heard, had not waived their right to move to have struck out the appearances of the petitioners therein, entered in opposition to the allowance of accounts of one who had been guardian of the decedent before his death, and, it appearing that said petitioners were not heirs nor next of kin of the decedent, the allowance of such motion to strike out, after dismissal of the petition, was proper.

PETITION, filed in the Probate Court for the county of Norfolk on February 25, 1933, by persons claiming to be heirs and next of kin of Julia E. Lovering, late of Wellesley, "to amend list of heirs" and for a decree directing that the petitioners be permitted to participate in the distribution of the estate.   Also

PETITIONS, filed in the same court for the allowance of the first to thirteenth and final accounts of persons who had served as guardians of Julia E. Lovering as an insane person before her death.   The two who were petitioners in the first petition filed appearances in opposition to the second petition.   Three of those who were respondents in the first petition moved that such appearances be struck out.

A motion to dismiss the first petition, described in the opinion, was heard and allowed by *McCoole*, J.   Subsequently, the motion to strike out the two appearances filed in opposition to the second petition was heard by the judge, and was allowed.   The two who were petitioners in the first petition appealed.

*H. F. Cochrane* of New York, (*E. L. Dunne* of New York & *M. A. Kamm* with him,) for Ambrose Cassidy and another.

*J. G. Palfrey*, (*H. Guild*, *G. M. Nead* & *H. Morton* with him,) for Sarah L. Truscott and others.

RUGG, C.J.   These two appeals from decrees of a probate court relate to the estate of Julia E. Lovering, deceased, late a resident of this Commonwealth.   The first appeal is

from a decree dismissing a petition by Ambrose Cassidy and his sister, Margaret Frances Alldridge, hereafter called the appellants, filed in connection with the administration of the estate of the deceased, of which an administrator has been appointed pursuant to a petition in due form. The second appeal is by the same persons from a decree striking out appearances entered on their behalf in connection with accounts of the guardians of the deceased, she having been under guardianship for many years before her death. The cases were not heard, nor were the decrees entered, at the same time. The underlying contention of the appellants in each proceeding rests upon the same proposition of law. The cases have been argued together and upon a single brief in behalf of each side.

The petition in the first case is entitled "Petition to Amend List of Heirs." The heirs at law and next of kin of the decedent set out in the petition for administration of her estate are three cousins. The petition of the appellants assumes, if it does not expressly allege, that there are no heirs nearer than cousins. It alleges also that the decedent was an insane and incompetent person from birth to death and that her mother was insane for many years before her death. It alleges facts showing that a large part, if not the whole, of the estate of the decedent came to her because she was the sole heir at law and next of kin of her mother, that it consisted in considerable part of real estate which was not changed in character although converted into personal property, that this property came under will of her grandmother, Eliza Parker Shimmin, whereby under a trust the mother and father of the decedent enjoyed the benefit during their lives and upon the death of the survivor it went to the decedent as the only child of her mother, who was the daughter of Eliza Parker Shimmin; that the decedent also inherited estate from her mother derived by the latter as heir at law and next of kin from her brothers and sisters whom she survived. Further facts are set forth which are alleged to establish that the estate of the deceased "was made up and consisted of what under the common and civil laws was known as an ancestral estate" and that the

appellants are the next of kin of the decedent of the same blood as the ancestor from whom her estate and inheritance came, and therefore are entitled to inherit as her heirs, and that the statutes have no application to the descent and distribution of the estate of the deceased. In substance and effect the claims set forth are that the appellants as children of a first cousin of the decedent on her mother's side and great grandchildren of her maternal grandmother, through whom the decedent ultimately derived her estate, are her heirs at law in preference to her first cousins on her father's side. The prayers of the petition are that a decree be entered including in the administration of the estate of the decedent the names of the appellants as her heirs at law and next of kin, and striking out the names of those alleged to be such in the petition for administration, and for a decree directing the distribution of the entire estate to the appellants, or in the alternative directing the distribution of the estate to the appellants *per stirpes* by right of representation of their deceased mother, a first cousin of the decedent.

In respect to this petition there was filed in behalf of those named as heirs at law and next of kin in the petition for administration a motion which was in substance and effect a demurrer challenging both the practice and the substance of the petition. A decree was entered dismissing the petition (a) because it stated no case for relief conformably to the jurisdiction, practice and procedure of the court, and (b) because no law of the descent of ancestral estates prevails in the Commonwealth or governs the descent of the property and estate of the decedent.

1. The appellants invoke an ancient rule of the law of England with respect to the descent of real estate to the effect that "on failure of lineal descendents, or issue, of the person last seised, the inheritance shall descend to his collateral relations, being of the blood of the first purchaser." 2 Bl. Com. (4th ed.) 220. It would be vain to undertake to trace the origin of this rule and to determine the social conditions to which it was applicable. The rule, so far as we have been able to discover, has never been recognized as prevailing within the territory now included

within the boundaries of this Commonwealth. The Puritan colonists, when they came to these shores, "claimed the common law as their birthright, and brought it with them, except such parts as were judged inapplicable to their new state and condition." *Commonwealth* v. *Knowlton,* 2 Mass. 530, 534–535. The descent of real estate was regulated by the colonists from early days, and feudal rules were abolished from time to time. Laws regulating the descent of real estate in England were in numerous respects regarded as not applicable to the new situation confronting the colonists. It is not necessary to trace the colonial laws on this subject.

The point here raised is settled by previous decisions of this court. In *Sheffield* v. *Lovering,* 12 Mass. 489, issue was raised as to the descent of the real estate of Mary Marsh inherited by her as the only child of her deceased father. She died under age, unmarried and without issue. She left her mother and brothers and sisters of the half blood, children of her mother by a marriage prior to her marriage with the father of Mary Marsh. No one of these was a lineal descendant or a collateral relation of Mary Marsh's father, who was the "person last seised" and who so far as appears was "the first purchaser" of the land in question. Upon a strict application of the rule just quoted from Blackstone, seemingly the estate would have escheated. But the court, speaking through Jackson, J., said: "This could not be made a question at the common law; but with us, from the first settlement of the country, the rules of the descent and distribution of real and personal estate have generally been alike, and they depend wholly on our own statutes." The history of the relevant statutes up to that time is then traced. The conclusion was reached that the estate of the deceased minor was to be divided in equal shares between her mother and her brothers and sisters of the half blood. Shortly after the Province Charter became effective, a comprehensive statute was enacted as to the descent of property. It was there provided that the property of a decedent who died leaving no husband, nor wife, nor child, nor representative of a deceased child, should be distributed to the next of kin in equal degree and in no other

manner whatsoever. Prov. St. 1692, c. 14, § 1. An amendment was made by Prov. St. 1710, c. 2, § 1, which as somewhat modified by St. 1805, c. 90, § 1, provided that, when a child died under age not having married, his share of the inheritance that came from his father or mother shall descend in equal shares to his father's or mother's other children then living and to the issue of deceased children by right of representation. This provision was strictly construed. It was said in *Nash* v. *Cutler,* 16 Pick. 491, 499, in holding that an estate derived by devise was not within the terms of this statute, that its effect was rather to give "a new destination to that portion of the parent's estate, which has in some measure failed to accomplish the design of the legislature by the premature death of such child, than to provide a new and distinct rule of distribution for such child's own estate." That statutory provision was continued in force until repealed by St. 1876, c. 220, § 2, when the law as to descent was revised. It was wholly statutory in origin and was not derived from the common law ancestral estate. Compare G. L. (Ter. Ed.) c. 210, § 7. In *Lavery* v. *Egan,* 143 Mass. 389, 391–392, the principle was stated by Field, J., that "in this Commonwealth the descent of real estates held in fee simple has, from very early times, been regulated by statute." This matter was summarily determined by the court speaking through Holmes, J., in *Johnson* v. *Whiton,* 159 Mass. 424, 425–426, in these words: "By the old English law, to take land by descent a man must be of the blood of the first purchaser; Co. Lit. 12a; 2 Bl. Com. 220; and by the St. 3 & 4 Will. IV. c. 106, § 2, descent is traced from the purchaser. . . . The English rule means that inherited property does not pass from one line to the other, and is like the rule of the French customary law, *Propres ne remontent pas.* . . . But our statute of descent looks no further than the person himself who died seised of or entitled to the estate. In other words, inherited property may pass from one line to the other in Massachusetts. Pub. Sts. c. 125," now G. L. (Ter. Ed.) c. 190, §§ 3–8.

The terms of the statutes as to the descent of undevised

land are complete, comprehensive and peremptory. G. L. (Ter. Ed.) c. 190. That chapter was manifestly designed to cover the entire subject. It contains no exceptions. It excludes all provisions of the common law which might otherwise be operative. It applies to the estates of all persons who die without, devising their real estate. It is not confined in its operation to the undevised real estate of those capable of making a will. It affords the sole guide for determining the devolution of title to real estate of an intestate decedent, whether possessed of testamentary capacity or not. The appellants argue that the words of G. L. (Ter. Ed.) c. 190, § 3, to the effect that estates of deceased persons "not having lawfully devised the same" shall descend as there stated, import that the section is not applicable to estates of persons deprived of the power to make a will by reason of insanity. That argument has equal weight respecting real estate of deceased minors and others without testamentary capacity. There is no force in the contention. Neither the words nor the scheme of the statute permits such limitation. The statute embraces the whole field of the descent of real estate left by an intestate decedent. It governs all estates not devised by will, whatever may be the reason. It excludes all rules of law which might otherwise be operative. It impliedly repealed all preëxisting statutes and supersedes the common law. This principle of statutory interpretation is of broad sweep. It has been illustrated in many decisions. Apart from the authorities already cited, it governs the present case. *Doyle v. Kirby*, 184 Mass. 409, 411–412. *School Committee of Lowell v. Mayor of Lowell*, 265 Mass. 353, 356–357, and cases cited. *Knowlton v. Swampscott*, 280 Mass. 69, 71–72. *Commissioner of Banks v. Highland Trust Co.* 283 Mass. 71.

It is not open to doubt that an insane person may inherit or acquire real estate by deed. An insane person may inherit from an insane parent. *Anonymous*, Jenkins, 299 (Case LVIII). Washburn, Real Property (6th ed.) § 1829. The devolution of the real estate held in fee and left undevised by an insane person never capable of executing a valid will is governed by G. L. (Ter. Ed.) c. 190. The allegations

of the petition concerning the will of Eliza Parker Shimmin in substance are that a trust was established, of which the mother and father of the decedent were beneficiaries; that these beneficiaries have both died and hence the trust has come to an end; that the principal was then to be divided among the children of the mother and that the decedent was the only child then living. The principal of the trust fund therefore then vested in the decedent in absolute ownership. She was under guardianship. Her guardian may be presumed to have done whatever, if anything, was needed to protect her rights. The guardian had power to accept, if acceptance was necessary. *Kent* v. *Morrison*, 153 Mass. 137, 140. The motion to dismiss the petition was in substance a demurrer. It admitted only the facts well pleaded, but did not admit the conclusions of law. The underlying contention of the appellants was plain. No evidence was appropriate. The case was properly heard upon the petition and motion to dismiss. It was decided rightly.

It is not necessary to discuss further arguments presented in behalf of the appellants. They have all been considered. What has been said is decisive against their contentions. The case has been fully argued on this point and there is no objection to stating the grounds of substantive law which demonstrate that the appellants cannot prevail. See *Commonwealth* v. *McNary*, 246 Mass. 46, 48.

2. The substance of the petition shows that one purpose is to procure an adjudication that the appellants are heirs of the decedent. No such procedure is known to our probate practice except as it may be incidental to other direct relief. A petition for partial or final distribution of an intestate estate raises the issue as to the heirs at law and next of kin of the decedent. The issue may arise upon a petition for administration, or for proof of a will. The present petition is not directed to any of these proceedings. The time has not yet arrived for distribution of the estate of the decedent. The petition does not allege that the estate is ready for distribution. The appointment of the administrator has been made and no issue is now raised

concerning that appointment.   There is no procedure for amending on the petition of a stranger the list of heirs in a petition for administration after the appointment of an administrator has become effective.   It was said in *Shores* v. *Hooper,* 153 Mass. 228, at page 231: "There is no proceeding known to us by which, under our law, one may establish his legitimacy or his descent by a proceeding which may terminate by a decree in the nature of a decree *in rem,* and by which all would be concluded."   Heirs at law are afforded ample relief under the statutes for requiring accounting and distribution and by action on the bond. G. L. (Ter. Ed.) c. 197, §§ 22, 23; c. 206, § 18; c. 205, § 22.

3. There was no error of law in striking from the records the appearance in behalf of the appellants in the proceedings as to the allowance of the accounts of the guardians of the decedent.   The appellees had not waived by conduct, procedure or words their right to move to strike out such appearance.   Participation in the hearing on the petition of the appellants in the administration proceeding constituted no waiver.   It is recognized procedure to move to strike from the record appearances entered in behalf of persons claiming to have an interest as heirs at law or next of kin in the estate of a decedent in process of settlement. *Finer* v. *Steuer,* 255 Mass. 611, 616–617.   *Edwards* v. *Cockburn,* 264 Mass. 112, 120.   *Hopkins* v. *Treasurer & Receiver General,* 276 Mass. 502.   The issue raised on this motion was whether the appellants were heirs at law of the decedent. The decision of the trial judge amply supported by the evidence was that the appellees as first cousins of the deceased were her heirs at law and next of kin, and that the appellants, being children of a deceased first cousin of the decedent, were not her heirs at law and next of kin.   This is in accord with the plain provisions of G. L. (Ter. Ed.) c. 190, § 3 (6).   See *Knapp* v. *Windsor,* 6 Cush. 156.   There was seemingly no dispute as to the degrees of kinship. Offers of proof as to the source from which the property of the decedent was derived were immaterial.   The insanity of the decedent and of her mother had no relevancy to the issue to be decided.   The appellants rested their con-

tention on the doctrine of ancestral estate as a governing principle of descent in Massachusetts. As already pointed out, that contention cannot be maintained.

No error of law is shown on either record. The result is that in each case the decree was right and is affirmed.

*Ordered accordingly.*