EDWARD H. R. GREEN & others, trustees, *vs.* JAMES A. KELLEY & another.

Bristol.    October 22, 1917. — December 31, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Legitimacy. Devise and Legacy. Words,* "Lineal descendants."

The will of a testatrix gave the residue of her property, upon the termination of a life interest, to the "lineal descendants then living" of G H, the grandfather of the testatrix. It appeared that one of the grandchildren of G H whose issue were entitled to share in the gift left one son born in Michigan in lawful

wedlock and two other sons born in Indiana and remaining domiciled there, with whose mother the grandchild of G H went through a form of marriage, while his first marriage remained in force, which but for such former marriage would have been valid, and that the mother of the two last mentioned sons had no knowledge until after their birth of any impediment to her marriage with their father and had no reason to believe that he had contracted a former marriage, that a statute of Indiana, in force when the two Indiana sons were born and still in force, provided that "When either of the parties to a marriage void, because a former marriage exists undissolved, shall have contracted such void marriage in the reasonable belief that such disability did not exist, the issue of such marriage begotten before the discovery of such disability by such innocent party, shall be deemed legitimate." It further appeared that these three sons of the grandchild of G H were living at the time of the death of the beneficiary for life. *Held*, that the "lineal descendants then living" of G H must be those recognized as such by the law of this Commonwealth, that by such law the *status* of the sons of the grandchild as to legitimacy was dependent upon the law of their domicil unless that was contrary to the statute law or the public policy of this Commonwealth, which the statute of Indiana quoted above clearly was not, and that this law of their domicil showed that the two Indiana sons were legitimate, so that the three sons of the grandchild of G H were entitled to share equally as his lineal descendants.

Appeal by James A. Kelley of New Albany, Indiana, and Charles B. Kelley of Salem, Indiana, as alleged beneficiaries under a trust created by the will of Sylvia Ann Howland, late of New Bedford, from a decree of the Probate Court for the county of Bristol ordering a distribution of the trust fund among the lineal descendants of Gideon Howland, late of Dartmouth, who were living on July 3, 1916, and excluding the petitioners as being persons not entitled to share as such lineal descendants.

A previous decision of this court upon the petition for the decree of distribution appealed from is reported *ante,* 537.

The case came on to be heard by *Crosby,* J., who at the request of all the parties reserved it upon an agreed statement of facts, including the facts stated in the opinion, for determination by the full court.

The case was submitted on briefs.

*O. S. Cook, M. R. Brownell & F. H. Taber,* for the respondents James A. and Charles B. Kelley.

*M. R. Hitch,* for the respondent Frank H. Kelley.

Rugg, C. J. This case relates to the distribution of the residue of the portion of the estate of Sylvia Ann Howland which would have been paid to Joseph H. A. Kelley had he been living. He entered into a legal marriage in Michigan before 1870 with a

woman still living, where Frank H. Kelley, the issue of that marriage was born. Joseph deserted his Michigan wife, while that marriage was in full force and, without obtaining a divorce, settled in Indiana, where in 1876 he went through the form of marriage, which would have been valid but for his Michigan marriage, with one Rosalena Cunningham. The issue of that alliance, born and still domiciled in Indiana, were James A. Kelley and Charles B. Kelley, who were acknowledged by their father as his sons and were supported and maintained by him. Their mother had no knowledge until after their birth of any impediment to her marriage with Joseph and had no reason to believe that he had contracted a former marriage. She and Joseph continued to reside in Indiana and to be subject to its laws until his death in 1899. There was a statute of Indiana at the time of the birth of the sons and since, to the effect that "When either of the parties to a marriage void, because a former marriage exists undissolved, shall have contracted such void marriage in the reasonable belief that such disability did not exist, the issue of such marriage begotten before the discovery of such disability by such innocent party, shall be deemed legitimate." Gen. Laws of Indiana, 1873, c. 43, § 3. The question is, whether the sons born in Indiana are entitled to share with the son born in Michigan in the property devised by Sylvia Ann Howland, late of New Bedford in this State, who died in 1865. She provided by will that at the termination of a life estate, now at an end, the residue of her property should be distributed and divided "to and among all the lineal descendants then living of my grandfather, Gideon Howland . . .", who died in 1823. Joseph H. A. Kelley was a lineal descendant of Gideon Howland. It is conceded that his Michigan son is one of the lineal descendants of Gideon Howland. The point to be decided is whether his Indiana sons also come rightly within that class.

It is clear that, if the form of marriage between Joseph H. A. Kelley and Rosalena Cunningham had occurred in Massachusetts, and they had lived here and their children had been born here, they would not be the legitimate children of their father, and hence not lineal descendants of Gideon Howland. There is no statute of this Commonwealth which goes far enough to permit that. But it is indubitable that, under the law of Indiana in force at the time of their birth and since, the sons of the void marriage

of Joseph with Rosalena Cunningham are the legitimate children of their father. That is the unmistakable import of the Indiana statute. *Binns* v. *Dazey,* 147 Ind. 536, 539. That law fixes the *status* of the sons, because their parents and the sons were domiciled in that State. The *status* of a person as to legitimacy depends upon the law of his domicil. It was said in *Ross* v. *Ross,* 129 Mass. 243, 246, 247, in an exhaustive opinion by Chief Justice Gray, reviewing all previous decisions, "the *status* or condition of any person, with the inherent capacity of succession or inheritance, is to be ascertained by the law of the domicil which creates the *status,* at least when the *status* is one which may exist under the laws of the State in which it is called in question, and when there is nothing in those laws to prohibit giving full effect to the *status* and capacity acquired in the State of the domicil." *Houghton* v. *Dickinson,* 196 Mass. 389. *Irving* v. *Ford,* 183 Mass. 448. Such *status* is recognized according to the principles of international law in other countries and States unless contrary to the positive law or to public policy of the sovereign power where it is drawn in controversy or so repugnant to good morals as to be improper to recognize. *Adams* v. *Adams,* 154 Mass. 290, 293. This rule prevails generally.

Removal of the obstacles to the legitimation of innocent children, who have no responsibility for the circumstances of their birth, and thus ameliorating some of the apparent harshness of the common law, has been the progressive policy of our law as illustrated by statutes and decisions. See *Loring* v. *Thorndike,* 5 Allen, 257, and *Monson* v. *Palmer,* 8 Allen, 551, where some of the statutes are reviewed.

It is not contrary either to the statute law or the public policy of this Commonwealth that the children of a marriage, bigamous on the part of one parent but innocent on the part of the other, should be declared legitimate to some extent and under some circumstances. There is no express prohibition of such recognition in our statutes. There is no intimation of the inhibition of such recognition in any of our decisions. It was early provided by statute that in proceedings for the dissolution of a marriage, void on account of prior marriage of either party, if it appeared that the second marriage was contracted in good faith by both parties and in the full belief that the former husband or wife was dead, the

issue of the second marriage begotten before the commencement of the suit should be deemed to be the legitimate issue of the parent capable of contracting the marriage. Rev. Sts. c. 76, § 23. R. L. c. 151, § 14. This was enlarged by St. 1902, c. 310, so that when a marriage was declared void by reason of a prior marriage of either party, the issue of such marriage would be the legitimate off-spring of the party capable of contracting the marriage when that parent alone believed that the former husband or wife was dead, or that the former marriage was void or was dissolved by divorce. Manifestly even this statute does not go so far toward removing the stigma of bastardy from the issue of a void marriage as does the statute of Indiana here applicable. For example, it leaves such issue helpless in this regard after the death of either parent. *Rawson* v. *Rawson,* 156 Mass. 578. But it recognizes the humane spirit of statutes having this general purpose. That there is nothing contrary to good morals in the enactment of such statutes is too clear for discussion.

The will of the testatrix gave the residue of her property, upon the termination of the life estate, to the "lineal descendants then living" of her grandfather. This will speaks from her death, which occurred in 1865. "Lineal descendants" means the legitimate immediate and remote progeny in direct line. These words of description in the will lay down the general rule for the ascertainment of the beneficiaries; but they do not completely and accurately define how the *status* is to be created which confers the capacity to share the benefaction. They do not prescribe how lineal descendants shall be determined. Therefore the testatrix doubtless intended by those words that only those who would be the lawful issue of her grandfather according to the law of Massachusetts should be participants in her bounty. But these words do not mean that those who are lineal descendants must be ascertained on the footing that all claimants to be such were born and had always lived in this Commonwealth as their domicil of origin and residence, no matter where born and domiciled in fact. If that had been the purpose of the testatrix, apt words to that end would have been used. The law of Massachusetts recognizes that legitimacy ordinarily is a *status* dependent upon the law of the domicil of the person in question. The lineal descendants of any resident of Massachusetts, according to its law, are those who by

the law of the State of their domicil of origin and residence are the legitimate issue of that person.   The law of this Commonwealth does not require that the *status* of a citizen of a foreign jurisdiction as to legitimacy necessarily or commonly must be settled according to the law of Massachusetts upon that subject as to its own citizens, rather than by the law of their own home.   *Ross* v. *Ross,* 129 Mass. 243, 267.   This is the law of most other jurisdictions.   *In re Goodman's Trusts,* 17 Ch. D. 266.   *Andros* v. *Andros,* 24 Ch. D. 637.   *In re Grey's Trusts,* [1892] 3 Ch. 88.   *Moore* v. *Saxton,* 90 Conn. 164. *Mund* v. *Rehaume,* 51 Col. 129, 136.   *Dayton* v. *Adkisson,* 18 Stew. 603.   *Miller* v. *Miller,* 91 N. Y. 315.   *Fowler* v. *Fowler,* 131 N. C. 169.

Since the sons of the Indiana marriage are the legitimate issue of their father according to the law of the State of their birth and domicil, they possess that *status* which must be recognized in this Commonwealth.   They are thus lineal descendants of Gideon Howland by reason of being the legitimate sons of their father. As such they are entitled to share in the estate of the testatrix.

The decree is to be modified so that in substance the distributive share to which Joseph H. A. Kelley would have been entitled, if living, is to be divided equally between Frank H. Kelley, James A. Kelley and Charles B. Kelley.

*So ordered.*