BARNHARDT R. SEEMANN *vs.* DONALD A. ENEIX & another.

Bristol.    October 29, 1929. — July 2, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Contract,* Construction. *Partnership,* What constitutes. *Practice, Civil,* Foreign law. *Evidence,* Of foreign law, Presumptions and burden of proof.

A contract in writing between the manager of an office in Pittsburgh in Pennsylvania of a corporation engaging in manufacturing in Massachusetts and a salesman of the corporation's manufactured articles, which contained provisions that the two should share the expenses of the Pittsburgh office; that they should receive a certain percentage of the amount allowed by the corporation as commissions on their own respective sales; and that a certain division should be made between them of the remainder of such commissions, where it appeared that the business managed by the plaintiff was his and not a joint business nor a common enterprise of the two, did not require a finding by a master hearing a suit in equity that it constituted the

two men partners, but warranted a finding that it was merely an arrangement intended to give the salesman added incentive to sell more of the corporation's goods by offering him a greater share of the profits of the Pittsburgh office than he would ordinarily receive.

While the controlling agreements above described were made in Pennsylvania to be performed there, so that their meaning, force and effect were to be ascertained according to the law of that State, in the absence of any statute or decision of Pennsylvania being brought to the attention of, or considered by, the master or the trial judge and of any contention made before either of them or before this court that the law of Pennsylvania in respect to the creation of the partnership relation was different from the common law of this Commonwealth, it was *held* not to be necessary to determine whether the law of Pennsylvania differed from our common law even if that question were open upon this record.

St. 1926, c. 168, did not change the rule of law that, where foreign law is material in a cause tried in the courts of this Commonwealth, it is a fact to be brought to the attention of the court; and that, if it is not so brought, it is presumed to be the same, in the circumstances of the case being tried, as is the common law of this Commonwealth.

BILL IN EQUITY, filed in the Superior Court on August 27, 1928, and afterwards amended, described in the opinion.

The suit was referred to a master. Material facts found by the master and exceptions to his report are described in the opinion.

From a final decree, entered by order of *Dillon,* J., and described in the opinion, the defendant appealed.

*R. B. Heavans,* for the defendant Eneix.

*E. F. Thayer,* for the plaintiff.

FIELD, J. By this suit in equity the plaintiff seeks to recover from the defendant Eneix, hereinafter called the defendant, money alleged to be due from him to the plaintiff by reason of business dealings between them during the period from 1922 to 1928, in connection with the sale of goods manufactured by the defendant L. G. Balfour Company, hereinafter called the defendant corporation, and to reach and apply in satisfaction of a debt certain stock of the defendant corporation. The defendant filed an answer and a cross bill. The case was referred to a master who made a report. The evidence is not reported. The defendant filed objections to the master's report and a motion to recommit. A decree was entered, overruling the objec-

tions to the master's report, denying the motion to recommit, confirming the report, denying the defendant's requests for rulings, ordering payment by the defendant to the plaintiff of the sum of $1,081.35 with interest and costs, and restraining the defendant corporation from redeeming the shares of its stock in the defendant's name without deducting from the amount otherwise payable to the defendant an amount sufficient to satisfy his obligation to the plaintiff, and directing the defendant corporation to pay such amount to the plaintiff. The defendant appealed.

The decree went upon the theory that the plaintiff and the defendant were not partners. It was based upon a finding by the master, to which the defendant objected, that "no partnership was ever entered into between . . . [the plaintiff and the defendant], but that the arrangement between them was one intended to give the . . . [defendant] added incentive to sell more of the . . . [defendant corporation's] goods by offering him a greater share of the profits of the Pittsburgh office than he would ordinarily receive." The questions argued before us were (a) whether, as the defendant contends, the plaintiff and the defendant were partners during the period in question and (b) whether evidence offered by the plaintiff and admitted by the master over the objection of the defendant should have been excluded.

1. The plaintiff and the defendant were not partners. The finding of the master that "no partnership was ever entered into between . . . [them]" must stand. Whether there was a partnership was a question of "mixed law and fact well within the master's authority to have decided." *Lindsay* v. *Swift*, 230 Mass. 407, 412. This finding is not inconsistent with the other findings or plainly wrong. See *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334; *Jacobs* v. *Anderson*, 244 Mass. 125, 126.

The master found the following subsidiary facts: Prior to 1922, the defendant corporation, "a concern engaged in the manufacture of jewelry and novelties" in Massachusetts, was maintaining an office in Pittsburgh, Pennsylvania, "paying the rent and all operating charges." The plaintiff was

in charge of this office "as district manager." He made an agreement with the defendant, as the result of which the defendant purchased merchandise from the defendant corporation which was sent to him direct from the manufacturer. "It was purchased at a net price, and ten per cent of said net price was paid to the . . . [plaintiff]. This merchandise, together with merchandise of other manufacturers, was sold by the . . . [defendant]."

In 1922 "a new policy in reference to maintaining the Pittsburgh office was adopted. This policy provided that the rent and operating charges should no longer be borne by the . . . [defendant corporation], and that the Pittsburgh office should be paid thirty per cent of the amount of the sales secured through that office to be apportioned as the office manager saw fit. The . . . [plaintiff], as office manager, acquainted the . . . [defendant] with the details of the new arrangement, and offered a proposition to the . . . [defendant] whereby . . . [they] were to share equally all the expenses of the Pittsburgh office, and . . . were to receive twenty per cent of the amount of their own respective sales . . ., and in addition thereto the remaining ten per cent of the thirty per cent paid the office was to be divided between them in the proportion of the first five per cent to the . . . [defendant] and the second five per cent to the . . . [plaintiff], and if other salesmen were hired through the office . . . the salesmen were to be paid twenty per cent of the amount of their respective sales and the remaining portion of the thirty per cent paid by the . . . [defendant corporation] to the Pittsburgh office . . . was to be divided between the . . . [defendant] and the . . . [plaintiff] . . . The expenses to be borne included the entire maintenance costs of that office, as well as the deficits sustained by the salesmen of that office, who failed to earn commissions in excess of the advances made them by the home office . . . plus charges made for losses in the samples assigned to the salesmen and charges for uncollectable accounts secured by them and also losses in samples provided by the . . . [defendant corporation] . . . This was known as the 20–5–5 agreement and was accepted by the . . . [plaintiff] and . . . [defendant],

and was renewed yearly for two or three years. This agreement, as well as all subsequent agreements, was made and performed in Pittsburgh in the State of Pennsylvania. Although at the time of making this agreement there were no other salesmen, . . . the . . . [defendant], subject to the approval of the . . . [plaintiff], proceeded to secure salesmen . . . and from such salesmen . . . secured their signature on contracts with the . . . [defendant corporation]. As many as six or seven salesmen were selling at one time during this period, and a force of four or five was usually maintained, some being hired by the . . . [plaintiff] and some by the . . . [defendant]. All salesmen, however, being subject to the control and direction of the . . . [plaintiff] as district manager . . . Subsequently another contract, similar to the 20–5–5 agreement, was entered into by the . . . [plaintiff] and . . . [defendant], alike in all terms and conditions with the previous contract with the exception that the . . . [defendant] was to receive twenty-two per cent of his sales as salesman instead of twenty per cent as formerly; and was to receive four per cent of the sales of the other salesmen, . . . [the plaintiff's] sales included, instead of five per cent, while the . . . [plaintiff] was to receive four per cent as his share instead of five per cent as formerly. This contract called the 22–4–4 agreement was renewed yearly until 1928."

In 1928, the defendant's "connection with the . . . [plaintiff and the defendant corporation] was severed." Although the defendant corporation "customarily insisted" that salesmen sign contracts of employment and furnish bonds, and "most of the salesmen in the Pittsburgh office" had done so, the defendant never signed such a contract or furnished a bond. He "did not think himself as in the employ" of the defendant corporation "in spite of the fact that he used printed cards as representing that company" and subscribed for stock therein, "according to the terms of which [it] could only be issued to employees."

As the controlling agreements were made in Pennsylvania to be performed there, their "meaning, force and effect" are to be ascertained according to the law of that State. *John B.*

*Frey Co. Inc.* v. *S. Silk, Inc.* 245 Mass. 534, 539. *Montreal Cotton & Wool Waste Co. Ltd.* v. *Fidelity & Deposit Co. of Maryland,* 261 Mass. 385, 390. Before the passage of St. 1926, c. 168, (amending G. L. c. 233 by substituting a new § 70 and repealing §§ 71, 72), which provides in § 1 that "The courts shall take judicial notice of the law of the United States or of any state, territory or dependency thereof or of a foreign country whenever the same shall be material," the law of another State was "a fact to be proved, like any other fact, by evidence" (*Wylie* v. *Cotter,* 170 Mass. 356, 357), though if found in a single statute or a decision the interpretation thereof was a question for the court. *Electric Welding Co. Ltd.* v. *Prince,* 200 Mass. 386, 390. See *Lennon* v. *Cohen,* 264 Mass. 414, 421. In the absence of evidence of foreign law a case was to be decided in accordance with the common law of this Commonwealth, because "the common law of a sister State" was "presumed in the absence of evidence to be the same," though there was no presumption that the law of the other State corresponded with any statute of this Commonwealth. *John B. Frey Co. Inc.* v. *S. Silk, Inc. supra.* See, as to foreign countries not governed by the common law, *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 190–194.

According to the common law of this Commonwealth, the finding of the master, that "no partnership was ever entered into" between the plaintiff and the defendant, was not inconsistent with his other findings or plainly wrong. The intention of the parties is an important factor in determining whether a partnership was created. *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111, 116. See also *Magee* v. *Magee,* 233 Mass. 341, 345; *Mitchell* v. *Gruener,* 251 Mass. 113, 123. The master's subsidiary findings do not require the conclusion that the plaintiff and the defendant intended to become partners. They are consistent with the finding that "the arrangement between . . . [the plaintiff and the defendant] was one intended to give the . . . [defendant] added incentive to sell more of the . . . [defendant corporation's] goods by offering him a greater share of the profits of the Pittsburgh office

than he would ordinarily receive," and this finding is consistent with the conclusion that no partnership was intended. Nor was a partnership the necessary result of the agreement between the plaintiff and the defendant. The business carried on was that of managing the Pittsburgh office of the defendant corporation. This was the plaintiff's business, not the "joint business" of the plaintiff and the defendant (see *McMurtrie* v. *Guiler*, 183 Mass. 451, 453), or a "common enterprise" (see *Mitchell* v. *Gruener*, *supra*), whether or not the defendant, as salesman, was an employee of the defendant corporation. The plaintiff received from the defendant corporation thirty per cent of the proceeds of all sales made through that office and distributed this amount as he saw fit, in accordance with such agreements as he might make with respect to it. He alone had control and direction of the salesmen attached to that office. So far as appears, the defendant performed no managerial functions except as he employed some of the salesmen, and these he employed, in each case, subject to the approval of the plaintiff. There was no community of control or management of the business between the plaintiff and the defendant and none of interest therein, except as the plaintiff and the defendant shared equally in the managerial commissions and the expenses of the office. Such equal division of commissions and of expenses is not conclusive evidence that a partnership existed. "One term of the contract or one aspect of the relationship cannot be fastened upon to the exclusion of other parts. The whole scope of the arrangement must be examined . . . ." *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111, 115–116, and cases cited. Nothing in the master's report indicates that his finding was not warranted when the whole scope of the arrangement between the plaintiff and the defendant is considered.

St. 1926, c. 168, did not change the nature of foreign law as fact or do away with the presumption that it is the same as the common law of this Commonwealth. *Lennon* v. *Cohen, supra. Richards* v. *Richards*, 270 Mass. 113, 117. This statute merely changed the method by which foreign

law is brought to the attention of the court by substituting judicial notice for proof by evidence. The record does not disclose that any statute or decision of the State of Pennsylvania was brought to the attention of, or considered by, the master or the trial judge or that any contention was made before either of them that the law of Pennsylvania in respect to the creation of the partnership relation was different from the common law of this Commonwealth. Nor does the defendant, who appealed from the decree, make that contention here. On the contrary he asserts that the common law of Massachusetts must be assumed to govern. It follows that it is not necessary for us to determine whether the law of Pennsylvania differed from our common law even if that question is open upon this record. See *Lennon* v. *Cohen*, 264 Mass. 414, 420–421; *Richards* v. *Richards*, 270 Mass. 113, 119. See also *Commonwealth* v. *Dyer*, 243 Mass. 472, 508. Compare Wigmore, Evidence, (2d ed.) § 2568.

2. The master, over the objection of the defendant, permitted the sales manager of the defendant corporation to testify that there was dissatisfaction on its part with the defendant's work and to state the grounds of such dissatisfaction. This evidence was material to the issue, raised by the pleadings, as to the termination by the plaintiff of his contract with the defendant without just cause and was admitted properly.

3. It is not contended that the other findings of the master to which the defendant objected are erroneous, except so far as they depend upon the finding that the plaintiff and the defendant were not partners. Consequently, the defendant's objections to the master's report were overruled rightly. No reason appears for recommitting the report or denying confirmation of it. The rulings of the trial judge requested by the defendant were incorrect or inapplicable to the facts found by the master and the requests therefor were denied properly.

*Decree affirmed with costs.*