CARRIE S. RODRIGUES, administratrix, *vs.* MARIA DAS ANGUSTIAS RODRIGUES.

Essex.   April 5, 1933. — March 28, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Illegitimacy. Conflict of Laws. Evidence,* Judicial notice, Of foreign law.

In proceedings in a probate court with respect to the administration of the estate of a man who died domiciled in this Commonwealth, a woman filed a petition seeking recognition as his heir. It appeared that she was his child, born out of wedlock in the Azores Islands, shortly after he removed thence to this Commonwealth; that subsequently he acknowledged her as his child; that the law of Portugal, applicable in the Azores Islands, provided for an action to investigate the paternity of an illegitimate child, and that if the child should prevail in such an action, he should have certain rights "from the commencement of the proceedings"; and that, after the decedent's death, the woman commenced such an action in the Azores Islands, in which the father of the decedent was the only party defendant and

in which a judgment was entered merely to the effect that she must be recognized as the illegitimate daughter of the decedent "for all and any legal purposes and specially for obtaining" such rights, there being in the record of such action no declaration of her legitimacy. She contended that the proceedings in the Azores Islands established her right to inherit as an heir of the decedent in the settlement of his estate in this Commonwealth. *Held,* that

    (1) The persons entitled to share in the distribution of the decedent's estate must be determined as of the date of his death;

    (2) In the circumstances, the judgment in the proceedings in the Azores Islands did not affect the status of the woman here at the time of the decedent's death;

    (3) At such time her status was merely that of an illegitimate child of the decedent, and as such she had no rights in his estate;

    (4) The woman was not entitled to the recognition which she sought.

In the proceedings above described, this court did not consider nor decide the question, what is the proper method to present to a court of this Commonwealth the law of a foreign country, not written in English, in order that judicial notice may be taken of it under G. L. (Ter. Ed.) c. 233, § 70.

PETITION, filed in the Probate Court for the county of Essex on January 3, 1931, for the appointment of the petitioner as administratrix of the estate of Manuel S. Rodrigues, late of Gloucester.

The petitioner was appointed administratrix. A petition subsequently filed by the respondent and a motion by the petitioner to strike out the respondent's appearance are described in the opinion. They were heard by *White,* J. The evidence was reported. Material evidence and findings by the judge are stated in the opinion. By his order, a decree was entered allowing the petitioner's motion. The respondent appealed.

*F. E. Knowles, V. J. Deponte & A. Andrade,* for the respondent, submitted a brief.

*J. M. Marshall,* for the petitioner.

RUGG, C.J. The petitioner was appointed administratrix of the estate of Manuel S. Rodrigues by decree of the Probate Court for the county of Essex on January 5, 1931, upon her petition, which recited that he died intestate, a resident of Gloucester in said county, leaving as his only heirs at law and next of kin herself as his widow, a resident of Gloucester, and Joseph S. Rodrigues, his father, a resi-

dent of Fayal, Azores Islands. On October 18, 1932, the respondent, Maria das Angustias Rodrigues, of Horta, Azores Islands, filed a petition in the case reciting that she was a daughter of the deceased, born out of wedlock, and legitimized by a court of competent jurisdiction in the country of her residence, whereby she is an heir at law of the deceased, and praying that she be joined as a party respondent. The petitioner filed a motion that this petition be denied and that it and the respondent's appearance be stricken from the records. After a hearing upon this motion the judge found these facts: the deceased was a native of the Azores Islands and lived there until March, 1907, when he came to America, established a domicil in Gloucester in this Commonwealth and lived there continuously until his death on December 18, 1930. He and the petitioner were lawfully married at Gloucester in 1912 and thereafter lived together as husband and wife until his death. Both were citizens of the United States. No children were born of this marriage. The deceased, prior to his departure from the Azores Islands, had illicit relations with a woman who, on or about May 22, 1907, gave birth to a child. The respondent is that child, now grown to maturity. The deceased never married the mother of the respondent. After leaving the Azores Islands the deceased never returned there and never again saw the mother of the respondent. He never saw the respondent herself. Before his marriage to the petitioner he told her of the birth of the respondent and acknowledged that he was the father of the respondent. Further findings are in these words: "The laws of Portugal, 'Codigo Civil Portugese,' apply to and are in force in and throughout the Azores Islands. By the provisions of these laws an action is permitted to investigate paternity of an illegitimate child, where such child is 'in possession of the State.' 'The possession of the State consists of the fact of a person having been reputed and treated as their child by the parents and of having been reputed as their child by the public.' 'By reason of the plaintiff prevailing in the action of legitimation the child shall have the rights provided in Article 31

from the commencement of the proceeding.' It appeared, by duly authenticated copy of the record, that an action in accordance with the foregoing provision was instituted, November 16, 1931, in the Court of Justice in the District of Horta (Azores Islands) in which the plaintiff was the said Maria das Angustias Rodrigues, single and of age, of said Horta, and the defendant was José Silveira Rodrigues, of said Horta, (the father of the decedent, Manuel Silveira Rodrigues), which action went to 'Sentence' on January 6, 1932, to the effect that said Maria das Angustias Rodrigues 'must be considered, judged and declared as an illegitimate daughter of the late Manuel S. Rodrigues for all and any legal purposes and specially for obtaining all the rights mentioned' in the provisions of the laws applicable to such cases, heretofore quoted." The entire record of that action in translation was in evidence at the hearing.

Upon all the evidence it was found and ruled by the judge in the present proceeding that the claim of the respondent "for legitimation, namely, to be deemed the legitimate child of the decedent and thereby to participate in the distribution of his estate, depends upon the law of" this Commonwealth as the domicil of the decedent and that since he and the mother of the respondent had never intermarried, the claim of the respondent must be dismissed. It was decreed that the respondent was not a legitimate child of the deceased and that she was not a party in interest in the settlement of his estate, and that the motion of the petitioner be granted. The case comes before us on the appeal of the respondent with report of the evidence, which was partly oral and partly documentary. The motion should be granted unless the respondent is the legitimate child of the deceased.

In the consideration of appeals of this nature the general equity rule prevails. This court examines the evidence and decides the case according to its judgment, giving due weight to the finding of the judge. His decision on matters of fact depending on oral evidence will not be reversed unless plainly wrong. His interpretation of documentary evidence may be revised. *Finer* v. *Steuer*, 255 Mass. 611,

622.  *Edwards* v. *Cockburn,* 264 Mass. 112, 120.  *Lindsey*
v. *Bird,* 193 Mass. 200, 201.  The finding of the judge as
to the law of Portugal was supported by a translation
offered by the respondent subject to the exception of the
petitioner.  It purports to be a translation of a "code" or
"decree" of December 25, 1910.  That was more than two
years after the deceased left the Azores Islands and took
up his residence in Gloucester.  It is difficult to understand
how his status or his estate in this Commonwealth can be
affected by such a law.  No other translation was offered or
presented to the attention of the trial judge.  In favor of
the respondent and for the purpose of this decision, this
translation is accepted as true without considering the
question how and to what extent parties must enlighten the
court to the end that judicial notice may be taken under
G. L. (Ter. Ed.) c. 233, § 70, of the law of a foreign country
not accessible in English.  See *Richards* v. *Richards,* 270 Mass.
113, 119; *Seemann* v. *Eneix,* 272 Mass. 189, 196; *Universal
Adjustment Corp.* v. *Midland Bank, Ltd. of London,* 281
Mass. 303, 327; *Lennon* v. *Cohen,* 264 Mass. 414, 421.  The
case of the respondent is accepted as she presented it at
the hearing before the judge and as disclosed by this record.

The respondent contends that, by the right interpreta-
tion of the terms of "Article 31" of the laws of Portugal
alluded to in that finding, she is entitled to the right to
inherit as an heir of the deceased in the settlement of his
estate in this Commonwealth.  Whether under the law of
Portugal the respondent would have been entitled to in-
herit as an heir of the deceased if he had died after the
entry of the decree in the Court of Justice in the District
of Horta need not be considered.

The translation offered by the respondent and the finding
are express to the effect that, if a plaintiff prevails under
the laws of Portugal "in the action of legitimation the child
shall have the rights provided in Article 31 from the com-
mencement of the proceeding."  Manifestly this clause
refers to the proceeding by which legitimation is sought.
The legitimation, if finally decreed according to the terms
of the Portuguese law, dates from the institution of that

proceeding. It is not retroactive to an earlier date under the law of Portugal. That is clear, also, from the repeated adjudications in the authenticated copy of the record of the Court of Justice in the District of Horta to the effect that the respondent was an illegitimate daughter of the deceased. That record contains no general or specific declaration of legitimacy. The other party to that proceeding was the father of the deceased, being the grandfather of the respondent. That record states that the grandfather is condemned to recognize the respondent "as a daughter of" the deceased "for all the legal purposes" enumerated. It does not purport to bind any one else, or to declare a status of legitimacy for the respondent from the beginning. On the contrary, that decree by its unequivocal words states in its body that the plaintiff "must be considered, judged and declared as an illegitimate daughter of the late Manuel S. Rodrigues for all and any legal purposes." Near its end is a similar explicit declaration. There is reference in the body of the decree to the "presumption of filiation." Filiation is the relation of parent and child; it does not import legitimacy, although often a step to that end. *Lay* v. *Fuller*, 178 Ala. 375, 380. There is nothing in this decree showing that that further step was taken. That decree does not go further than to establish filiation between the deceased and the respondent. It does not declare legitimacy. There would be strange incongruity in such repeated references to illegitimacy in a decree of a court which was designed to result in a declaration of unqualified legitimacy. That decree, in the light of the Portuguese law already quoted, could not take effect as affecting the status of the respondent in this Commonwealth earlier than the commencement of that action, namely, November 16, 1931. The deceased died on December 18, 1930. His heirs were fixed as of that date. At that time the status of the respondent was that of illegitimate child of the deceased. As such she could not inherit his estate.

The descent and distribution of the estate of the deceased are governed by the laws of this Commonwealth, where he

had been domiciled for many years and where he died. It is the general rule applicable to the case at bar that the heirs and next of kin and persons entitled to distribution of the personal estate of a deceased resident of this Commonwealth must be ascertained as of the date of his death. *Waverly Trust Co., petitioner,* 268 Mass. 181, 183. *Hopkins* v. *Treasurer & Receiver General,* 276 Mass. 502. It is plain that at that time the respondent had no rights in the estate of the deceased. She was his illegitimate child and incapable of inheriting from him as his lawful issue. *Plymouth* v. *Hey,* 285 Mass. 357, 359–360. G. L. (Ter. Ed.) c. 190, §§ 5, 7. A decree of a court such as is here shown as to the status of his illegitimate child, entered in a proceeding begun long after the date of the death of the decedent, to which his estate, his personal representatives, his heirs, his next of kin and those entitled to the distribution of his personal estate were not parties, cannot have effect upon the distribution of his personal property or the descent of his real estate in this Commonwealth. *Norman* v. *Heist,* 5 Watts & Serg. 171.

There is nothing shown on the present record which, according to the law of this Commonwealth as to the domicil of the deceased, constituted the respondent his legitimate daughter at the time of his decease, or entitles her to be a party to this proceeding. *Irving* v. *Ford,* 183 Mass. 448. *Ross* v. *Ross,* 129 Mass. 243. The principles of *Green* v. *Kelley,* 228 Mass. 602, and *Harding* v. *Townsend,* 280 Mass. 256, are inapplicable to the facts disclosed on this record.

It is not necessary further to discuss the arguments or review the authorities presented in behalf of the respondent. They have all been considered. No reversible error is shown.

By way of precaution it may be added that this decision is no precedent as to taking judicial notice of the law of a foreign country under G. L. (Ter. Ed.) c. 233, § 70, unless it be assumed that parties agreed as to the accuracy of the translation offered. Merely to direct attention to the law of a foreign country written in a foreign tongue does not make it a matter for judicial knowledge.

*Decree affirmed.*