STELLA D. BRADBURY *vs.* CENTRAL VERMONT RAILWAY, INC.

Middlesex.    April 7, 1937. — January 31, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Deceit.*

This court, acting under G. L. (Ter. Ed.) c. 233, § 70, adjudged that, by the law of Vermont, a railroad corporation was liable in tort for damages caused by innocent reliance upon a representation, made by its agents in that State in response to a request by a shipper for complete information as to whether he could ship Christmas trees into Canada, that such shipment could be made upon payment of a small importation fee, where it appeared that the representation was false because such importation was prohibited by a Canadian regulation unknown to the agents.

CONTRACT OR TORT. Writ in the Superior Court dated February 7, 1933.

A verdict for the plaintiff in the sum of $900 was recorded with leave reserved; and thereafter *Cox*, J., denied a motion that a verdict be entered for the defendant and reported the case.

*J. T. Phelps,* (*G. W. Howe* with him,) for the defendant.
*J. C. Donohoe,* for the plaintiff.

RUGG, C.J. This is an action of contract or tort. The declaration contained four counts, but at the trial the plaintiff waived the first three counts and elected to proceed on the fourth count alone, which was in tort. The allegations of the fourth count in substance are that the plaintiff, having received an order for the shipment of a carload of Christmas trees to Windsor, Ontario, Dominion of Canada, inquired of the defendant whether the plaintiff could make such shipment and whether there were any regulations which would prevent the delivery of such shipment at that destination; that the defendant, its agents and servants, "without making any investigation, or having made a negligent investigation, informed the plaintiff, or having made an investigation, negligently informed the plaintiff,

well knowing that the plaintiff was relying upon such information, that such shipment might be made, and thereupon the plaintiff, relying upon the representations of said defendant" and its agents, shipped a quantity of Christmas greens and greenery on a freight car furnished by the defendant, prepaying the freight, to said Windsor; that the consignee was prohibited from receiving such carload under a quarantine law in effect March 18, 1925; all to the great damage of the plaintiff.  This described an action of tort founded on false representations by the agent of the defendant that the plaintiff could send Christmas trees into Canada.  In substance and effect this is an allegation that the defendant knew, or should have known if care had been exercised, that the law of Canada was not as represented.  In other words, it contains an allegation that the defendant negligently misrepresented to the plaintiff that she could ship Christmas trees into Canada.

There was evidence in its aspect most favorable to the plaintiff tending to show that in 1931, and for several years prior thereto, the plaintiff was engaged in Vermont in the business of cutting Christmas trees and shipping them in carload lots to various cities in the United States.  On the morning of November 24, 1931, there was delivered to the plaintiff by the passenger and freight agent of the defendant at Richmond, Vermont, a telegram addressed to the plaintiff from her agent in Detroit, Michigan, informing her that Mossman Bros. Limited, of Windsor, Ontario, in the Dominion of Canada, had ordered a carload of Christmas trees to be shipped immediately.  The plaintiff, after reading the telegram, said to the agent of the defendant, "Can I ship Christmas trees into Canada?"  The reply was, "Yes."  Later the same morning the plaintiff went to the railroad station of the defendant in Richmond and again saw the agent (one Grace).  The plaintiff's husband, in the presence of the plaintiff, said to him, "Mrs. Bradbury tells me you say she can ship this car to Canada, but, before we ship, I want you to send a telegram to the general freight office of the Central Vermont Railway in St. Albans and get the whole dope on the car.  We will not ship until

we get full particulars. We won't accept the order until you hear from St. Albans." Grace said that "he would send a telegram." Two telegrams were sent by him. A reply from the general freight agent of the defendant at St. Albans, Vermont, was received, to the effect that "Customs Agent advises Xmas trees to Windsor, Ont. duty free but import tax 1 per cent of value will be assessed." Neither the plaintiff nor her husband saw or heard read the telegram sent or the telegram received by Grace. Shortly after Grace received the telegram from the general freight agent, he went out into the station yard, saw the plaintiff, and said to her, "I have heard from St. Albans. There is no duty on Christmas trees into Canada, but there is an entrance fee of 1 per cent of the value." On December 7, 1931, the defendant issued to the plaintiff a domestic straight bill of lading and the plaintiff shipped the Christmas trees to Windsor, Ontario. The freight was prepaid. Unknown to both the plaintiff and the defendant, there was a regulation of the Department of Agriculture of Canada, effective since March 18, 1925, prohibiting the importation of conifers and other forest products. The trees shipped by the plaintiff were within the terms of this prohibition and were not, under the law of the Dominion of Canada, permitted entry under any conditions into the Dominion of Canada from the State of Vermont. Subsequent efforts of the plaintiff to sell the trees were unavailing and they were later destroyed. Neither the plaintiff nor the defendant's agent, Grace, knew of this prohibitive regulation until the carload of Christmas trees had arrived at Windsor, Ontario. And when the agent replied in the affirmative to the plaintiff's question, "Can I ship Christmas trees into Canada?" he did not know that the statement was false. When, after receiving the telegram from St. Albans, he made the statement to the plaintiff, that there was no duty on Christmas trees into Canada, but an entrance fee of one per cent of the value, he did not know that the statement was false. There was no evidence that the defendant, its agents, or officers knew of the existence of the Dominion of Canada Destructive Insect and Pest

Act, or of Regulation No. 5 thereunder, which constituted the prohibition of the importation of Christmas trees.

The trial judge ruled that the rights of the parties must be determined in accordance with the law of Vermont, where the cause of action arose. The jury were instructed to determine whether the conduct of Grace, the agent of the defendant, was negligent, and, if they found that it was, they were to return a verdict for the plaintiff. It was agreed by counsel that in the event of a verdict for the plaintiff the damages were to be assessed in the sum of $900. The jury returned a verdict for the plaintiff in that sum. A motion for a directed verdict in favor of the defendant was denied. Leave was reserved to enter a verdict for the defendant under G. L. (Ter. Ed.) c. 231, § 120, but motion by the defendant for the entry of such verdict was denied by the trial judge, who reported the case for determination by this court.

The cause of action upon which the plaintiff relies was the statement by the agent of the defendant to the plaintiff that Christmas trees could be shipped into Canada from Vermont. That was a statement of fact because it related to the law of a foreign state or nation. *Electric Welding Co.* v. *Prince*, 200 Mass. 386, 390. *Seemann* v. *Eneix*, 272 Mass. 189, 194. That statement was false. That misinformation was given in Vermont. Whether it gave rise to a cause of action must be determined in accordance with the law of Vermont. *Levy* v. *Steiger*, 233 Mass. 600. *Gannett* v. *Boston & Maine Railroad*, 238 Mass. 125. *Hall* v. *Hamel*, 244 Mass. 464. *Walker* v. *Lloyd*, 295 Mass. 507, 510. Am. Law Inst. Restatement: Conflict of Laws, § 377, paragraph 4. The ruling of the trial judge in this respect was correct.

It is provided by G. L. (Ter. Ed.) c. 233, § 70: "The courts shall take judicial notice of the law of the United States or of any state, territory or dependency thereof or of a foreign country whenever the same shall be material." In the absence of proof to the contrary, the common law of Vermont is presumed to be the same as the common law of this Commonwealth. *Woodard* v. *Woodard*, 216 Mass. 1, 2.

*Klotz* v. *Pan-American Match Co.* 221 Mass. 38, 43. One decision of the Supreme Court of Vermont was put in evidence by the defendant at the trial and appears in the record. Other decisions of that court are cited in the brief of the defendant. This court under the statute just quoted may take judicial notice of the law of Vermont as found in the case cited in the record and the cases collected in the defendant's brief. *Lennon* v. *Cohen*, 264 Mass. 414, 420, 421. *Richards* v. *Richards*, 270 Mass. 113, 119. *Seemann* v. *Eneix*, 272 Mass. 189, 195. *Universal Adjustment Corp.* v. *Midland Bank, Ltd. of London*, 281 Mass. 303, 327. *Rodrigues* v. *Rodrigues*, 286 Mass. 77, 81. *Hanson* v. *Hanson*, 287 Mass. 154, 157. *Bergeron* v. *Bergeron*, 287 Mass. 524, 527. It is not the duty of this court to consider the law of Vermont unless it is brought to our attention by the record or briefs. Nevertheless, this court is not prevented from considering other pertinent Vermont decisions. *Eastern Offices, Inc.* v. *P. F. O'Keefe Advertising Agency, Inc.* 289 Mass. 23, 26. *Portland Maine Publishing Co.* v. *Eastern Tractors Co. Inc.* 289 Mass. 13, 15, 19. *Walker* v. *Lloyd*, 295 Mass. 507, 510. The defendant asserts that the law of Vermont does not create a cause of action for a merely negligent misrepresentation, but that it is necessary also to prove that the maker of the representation knew the representation to be false when made. The defendant, in support of this proposition, relies on the headnote in *Caldbeck* v. *Simanton*, 82 Vt. 69. That headnote, however, does not state the law of Vermont. It was held in *Arnold* v. *Somers*, 92 Vt. 512, 526, that a request for a ruling couched in the language of that headnote was properly denied "in that it ignored false representations made as of one's own knowledge without in fact knowing them to be true." That headnote omits the important qualification which appears in that opinion (82 Vt. 69 at page 77), where the whole proposition, quoted from Pom. Eq. Jur. § 884, is in these words: "No misrepresentation is fraudulent at law, unless it is made with actual knowledge of its falsity, or under such circumstances that the law must necessarily impute such knowledge to the party at the time when he makes it." To the same effect is *New-*

*man* v. *Kendall*, 103 Vt. 421, 424, 425. See also *McAllister* v. *Benjamin*, 96 Vt. 475, 486. It is said, also, in *Niles* v. *Danforth*, 97 Vt. 88, 93, 94, that *scienter* and intent to deceive "both may be implied where, as here, one makes a statement as of his own knowledge, when, in fact, he knows nothing about it." It could have been found that the agent of the defendant at Richmond made the statement to the plaintiff that Christmas trees could be sent into Canada by her as of his own knowledge or as of the knowledge of the defendant's agent at St. Albans. He had been asked by the plaintiff whether such trees could be shipped into Canada. He knew that the plaintiff would rely upon the truth of his reply. His words to the effect that such trees could be shipped into Canada, prefaced by the remark that he had heard from St. Albans, could have been found to have been uttered under circumstances calculated to lead the plaintiff to believe that the defendant had knowledge of the Canadian law and that he was making the statement on the basis of that knowledge. He did not possess that knowledge. A case for the jury was made out under the law of Vermont as declared in the decisions of that State already cited. See also *Litchfield* v. *Hutchinson*, 117 Mass. 195, 197, 198; *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403; *Huntress* v. *Blodgett*, 206 Mass. 318. *Bates* v. *Cashman*, 230 Mass. 167.

The result is that there was no error of law in the conduct of the trial. Verdict for plaintiff to stand.

*So ordered.*