ABDON VERGNANI *vs.* AROLDO GUIDETTI & others.

Plymouth.    March 7, 1940. — February 27, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, &
RONAN, JJ.

*Marriage and Divorce*, Validity of marriage, Proof of marriage. *Descent
    and Distribution. Conflict of Laws. Evidence*, Of marriage, Public
    document, Competency, Presumptions and burden of proof, Judicial
    notice, Foreign law. *Probate Court*, Findings by judge, Appeal.

Upon the issue, whether a man and a woman were lawfully married in
    Italy according to the law there, so that their son, born there after
    the alleged marriage, would be legitimate and therefore lawful next of
    kin of the man upon his death domiciled in this Commonwealth, this
    court adjudged from provisions of the Italian Civil Code, of which
    judicial notice was taken, and from uncontradicted testimony of
    experts in Italian law, that to effect a lawful marriage of the parents
    in Italy a civil ceremony was essential.
A provision of the Italian Civil Code, in substance permitting natural
    children to succeed to property if no husband or wife, ancestor or
    legitimate descendant survived a decedent, did not affect the status,
    for inheritance of personal property in this Commonwealth, of such
    a child born in Italy to a man who subsequently died domiciled here.
In a proceeding in a Probate Court involving the legitimacy of a son,
    born in Italy, of one who died intestate in this Commonwealth, cer-
    tain documents, duly authenticated under the provisions of the Con-
    sular Convention with Italy proclaimed in 1878 after ratification by
    the President in accordance with advice of the Senate, should have
    been admitted and on appeal were treated by this court as part of the
    evidence.
On evidence of a religious marriage ceremony in Italy, followed by a
    short cohabitation, after which the man emigrated and never saw the
    woman again, with Italian records showing that there had been a
    religious ceremony only and that the man later died in this Com-
    monwealth single, a finding by a judge of probate that there also had
    occurred the civil ceremony necessary to a valid marriage under Italian
    law was reversed by this court on appeal with a report of the evidence.

PETITION, filed in the Probate Court for the county of
Plymouth on September 29, 1937, praying that a decree
of the court appointing Frank Leveroni, Esquire, as ad-
ministrator of the estate of Nando Guidetti be vacated;

that the petitioner be appointed in his stead; and that the petition for administration be amended by striking out the names of collateral relations of the intestate as next of kin and inserting the name of Giuseppe Guidetti as sole next of kin.

The case was heard by *Stone*, J. Among findings and rulings by him were the following:

"I find that a valid marriage in accordance with the religious beliefs of Nando Guidetti and Zaira Vergnani took place. I find that Giuseppi Guidetti is the son of Nando Guidetti and his only heir at law. The marriage took place in 1901. The burden of proof was upon the petitioner to establish his status as the only son and heir at law of the intestate, Nando Guidetti. He has sustained this burden of proof.

"I am not entirely satisfied on the evidence before me as to just what was the law of Italy at the time of said marriage ceremony. Assuming that the civil code of Italy requires a civil ceremony for a valid marriage, I assume that this was done.

"The court assumes that a marriage solemnized by a priest and under which the parties have cohabited as husband and wife, is *prima facie* a valid marriage everywhere. If there were any requirements of the laws of Italy which should have been performed by the priest, I draw the inference from the evidence before me that the priest who performed the ceremony complied with all of such requirements.

"The policy of the law both in this Commonwealth and in Italy should be strongly opposed to regarding a marriage, entered into in good faith, believed by one or both of the parties to be legal and followed by cohabitation, as void. In this case, the spirit of this policy would be violated by holding the parties to be fornicators and the child illegitimate."

The case was argued at the sitting of the court in March, 1940, before *Field*, C.J., *Donahue, Lummus, Qua,* & *Dolan,* JJ., and afterwards was submitted on briefs to all the Justices.

*F. J. Moscone,* (*F. Leveroni* with him,) for the respondents.

*R. G. Clark, Jr.,* (*F. H. Balboni* with him,) for the petitioner.

LUMMUS, J. Nando Guidetti of Plymouth died intestate on March 16, 1936, leaving no real estate and personal estate of about $10,000. Representing that he left only collateral relatives, some in this country and others in Italy, a sister petitioned for administration, and on August 24, 1936, Frank Leveroni, Esquire, was appointed administrator.

On September 29, 1937, Giuseppe Guidetti of Sant' Agostino, Province of Ferrara, Italy, claiming to be the only child and heir of the intestate, filed, through his uncle and attorney in fact, Abdon Vergnani of Brockton, a petition for the revocation of the appointment of Mr. Leveroni and for the appointment of Abdon Vergnani as administrator.

It is not questioned that Giuseppe Guidetti is the son, legitimate or illegitimate, of Nando Guidetti by Ziara Vergnani of said Sant' Agostino, to whom Nando Guidetti paid attentions for two years and with whom he went through a religious ceremony of marriage solemnized in church at that place on the morning of June 8, 1901, before a Roman Catholic priest. There was evidence that after the wedding the couple drove away in a conveyance that was waiting, had breakfast, and then visited the parents of the intestate. It was possible for them to have been married civilly that morning in what in America would be called the town hall, which was across the street from the church. But though witnesses observed the religious ceremony, no witness knew of any civil ceremony. It could be inferred that the couple cohabited as husband and wife until the following morning. On the following morning the intestate departed for Plymouth in this Commonwealth, and Ziara returned alone to the house of her parents. They never saw each other again, for Ziara remained in Italy and died there about 1912, and Nando never returned to Italy from Plymouth. Their son Giuseppe was born on September 16, 1901. The intestate sometimes spoke of his wife and son as such, and both before and after coming to Plymouth declared his

intention to bring Ziara to Plymouth. For some years after coming to Plymouth he wrote to Ziara and sent her money, but gradually letters and remittances ceased.

The Probate Court on April 24, 1939, found that Giuseppe Guidetti is the legitimate son and sole heir of the intestate, revoked the appointment of Mr. Leveroni, and appointed Abdon Vergnani administrator. The collateral relatives appealed to this court.

The status of Giuseppe Guidetti was not affected by any legitimation after his birth, either in Italy or in America. He and his mother were in one country, and his father was in another, at all times. There is nothing in the evidence to suggest that any act was ever performed after his birth that could make him legitimate under the law of either country. His legitimacy in the eyes of the law of this Commonwealth depends upon the question whether his parents were lawfully married according to the civil law of Italy, as distinguished from the canon or ecclesiastical law of the church to which the great mass of the Italian people adhere. *Gorrasi* v. *Manzella*, 287 Mass. 165, 169. See also *Harding* v. *Townsend*, 280 Mass. 256, 259, 262; *Kapigian* v. *Minassian*, 212 Mass. 412; *Hanson* v. *Hanson*, 287 Mass. 154, 157; *Atwood* v. *Atwood*, 297 Mass. 229; *Green* v. *Kelley*, 228 Mass. 602; Am. Law Inst. Restatement: Conflict of Laws, §§ 121–127, 132, 133, 137, 138; *Ex parte Suzanna*, 295 Fed. 713; *Cosulich Societa Triestina di Navigazione* v. *Elting*, 66 Fed. (2d) 534.

The Italian Civil Code adopted in 1865 and in force in 1901 stated the requisites of marriage, by which is meant marriage according to the civil law of the Kingdom of Italy. It did not expressly declare void a marriage that did not conform to that law but did conform to the canon law of the Roman Catholic Church. In *Masocco* v. *Schaaf*, 234 App. Div. (N. Y.) 181, it was suggested that the Italian Code, like the statute of New York prescribing the requisites of marriage (*Hynes* v. *McDermott*, 82 N. Y. 41; *Gall* v. *Gall*, 114 N. Y. 109; compare *Milford* v. *Worcester*, 7 Mass. 48; *Commonwealth* v. *Munson*, 127 Mass. 459; *Norcross* v. *Norcross*, 155 Mass. 425; *Peck* v. *Peck*, 155 Mass. 479), was

not to be taken as making invalid any form of marriage that was valid before the enactment of the code, as a religious ceremony according to the canon law appears to have been. But the expert testimony, and decisions cited from the highest Italian courts, show that such a construction was not given to the provisions of the Italian Civil Code, that the requisites of marriage prescribed by that code were exclusive, and that any marriage that did not conform to that code was invalid in 1901.

Experts in Italian law stated without contradiction that under the civil code of Italy as it existed in 1901 a marriage solemnized before a priest in a church was not recognized by the civil law as valid, that the issue of such a marriage was not recognized by that law as the legitimate heir of his father, and that the only marriage recognized as valid was a civil marriage celebrated in what here would be called a town hall (*casa communale*) before a public officer. *Gorrasi* v. *Manzella*, 287 Mass. 165, 169. It is true that under the civil code of Italy, § 747, if no husband or wife, ancestors, or legitimate descendants (*discendenti legittimi*), survive, the natural children (*i figli naturali*) may succeed to property. But that provision, even if it applies to illegitimate children not formally acknowledged in accordance with Italian law, does not change the status of a child as legitimate or illegitimate, but merely permits an illegitimate child to inherit under certain conditions. It can have no effect upon the present case, for the domicil of the intestate and his property were in this Commonwealth, and descent and distribution of that property are governed solely by our laws. *Harding* v. *Townsend*, 280 Mass. 256, 259. *Rodrigues* v. *Rodrigues*, 286 Mass. 77, 82–83.

The fact that Nando and Ziara went through a religious ceremony of marriage either is *prima facie* evidence (see *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564) that that ceremony was lawful and sufficient; or casts the burden of proof in the sense of the burden of persuasion upon the party who contends that that ceremony was invalid. *Raynham* v. *Canton*, 3 Pick. 293, 297. *Commonwealth* v. *Kenney*, 120 Mass. 387. *Turner* v. *Williams*, 202 Mass. 500, 504.

*Finer* v. *Steuer,* 255 Mass. 611, 621. *Edwards* v. *Cockburn,* 264 Mass. 112, 125. *Riley* v. *Murphy,* 265 Mass. 420. *Gorrasi* v. *Manzella,* 287 Mass. 165, 168, 169. But in this case we take judicial notice of the provisions of the civil code of Italy (G. L. [Ter. Ed.] c. 233, § 70; *Rodrigues* v. *Rodrigues,* 286 Mass. 77, 81; *Eastern Offices, Inc.* v. *P. F. O'Keefe Advertising Agency, Inc.* 289 Mass. 23, 26; *Walker* v. *Lloyd,* 295 Mass. 507, 510; *Bradbury* v. *Central Vermont Railway, Inc.* 299 Mass. 230, 234; *Smith* v. *Brown,* 302 Mass. 432), and we have besides the uncontradicted testimony of experts on Italian law who have referred us to code provisions and decisions of the highest Italian courts showing that the religious ceremony had no standing under the civil law of Italy as it existed in 1901. *Eastern Offices, Inc.* v. *P. F. O'Keefe Advertising Agency, Inc.* 289 Mass. 23, 26. We think that the respondents have met any obligation that was on them to show that the religious ceremony was insufficient under the law of Italy.

The only theory upon which Giuseppe Guidetti can take the estate is that his parents were married by a civil ceremony. The burden is upon him to prove a valid civil marriage, for to inherit he must establish that he is the lawful heir or next of kin.

The decisive question, whether Nando and Ziara were ever lawfully married by a civil ceremony, is a pure question of fact, with the burden of proof on the petitioner. The case comes here on findings of fact made by the judge, and a full report of the evidence. Questions of fact as well as of law, are open for our consideration. *Rodrigues* v. *Rodrigues,* 286 Mass. 77, 80. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79. *Comstock* v. *Bowles,* 295 Mass. 250. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 407–409. *Terry* v. *Terry,* 305 Mass. 113. *Hiller* v. *Hiller,* 305 Mass. 163. *Culhane* v. *Foley,* 305 Mass. 542. In this case no question of belief or disbelief of direct testimony is involved. We take at its face value all the direct testimony favorable to the petitioner and to the decree below, and assume to be established all the basic facts shown by that testimony. Even if the rule that the findings of a

judge upon oral testimony will not be reversed unless he was plainly wrong (*Boston* v. *Santosuosso*, 307 Mass. 302, 331) can ever apply to inferences from basic facts found by the judge (*Newburyport Society for the Relief of Aged Women* v. *Noyes*, 287 Mass. 530, 532; *Bratt* v. *Cox*, 290 Mass. 553, 558), it does not apply where, as will appear in this case, the judge decided the case without considering important evidence that should have been admitted.

A valid ceremonial marriage may be inferred from circumstances occurring after the time of any possible ceremony. In the interest of regularity, lawful conduct and legitimacy, much may be inferred from scanty facts. G. L. (Ter. Ed.) c. 207, § 47, which originated in St. 1840, c. 84, and St. 1841, c. 20, reads as follows: "Marriage may be proved by evidence of an admission thereof by an adverse party, by evidence of general repute or of cohabitation of the parties as married persons, or of any other fact from which it may be inferred." In the present case, efforts by the petitioner to obtain from the public records of Sant' Agostino some evidence of a civil marriage resulted only in (1) a record of "family status" in 1937 which declared Nando Guidetti, who had then died in Plymouth, to have been a single man, and (2) a record of the birth of Giuseppe Guidetti in 1901 which declared that his parents were united in marriage by a religious ceremony only. The admissibility of these records, which were offered by the respondents, is in question.

The birth certificate bears the certificate and consular seal of the Vice-Consul of the United States at Florence, Italy, certifying that the Italian officer before whom the birth certificate was "legalized" in 1937 was a Chancellor of the Tribunal in and for the Province of Ferrara, and that the birth certificate was also certified by the lawful custodian of the original thereof at Sant' Agostino. The birth certificate purported to be an extract from the register of births. Certificates of birth and marriage are parts of the public records required by Italian law, and are evidence of the facts by Italian law. This distinguishes *Derinza's Case*, 229 Mass. 435, 442–444, *Santomassimo* v. *New York, Susque-*

*hanná & Western Railroad*, 92 N. J. L. 10, and *Russo* v. *Metropolitan Life Ins. Co.* 125 Conn. 132. The birth certificate appears to have been made on September 20, 1901, from the declarations to the public officer of a midwife who reported that a male child Giuseppe was born in her presence to a woman who does not wish to be named, united in matrimony by religious rite only with Nando Guidetti, twenty-five years of age, mason, residing in Dosso, but now in a foreign country for the purpose of seeking work. The custodian certified in 1937 that the copy, later offered in evidence, conforms to the original. Similar authentication appears upon the record of "family status," which is a public record required by Italian law.

These documents were not offered under G. L. (Ter. Ed.) c. 46, § 19, or c. 207, § 45, for those statutes have no application to foreign records. *Derinza's Case*, 229 Mass. 435, 442, 443. But they were admissible upon general principles. Wigmore, Evidence (3d ed.) §§ 1633, 1633a, 1642. The Consular Convention with Italy, proclaimed September 27, 1878, after ratification was advised by the Senate on May 28, 1878 (U. S. Const. art. 2, § 2) and ratification by the President on June 4, 1878 (20 U. S. Sts. at Large, 725), in art. 10 provided that "official documents of all kinds, whether originals, copies or translations, duly authenticated by the Consuls General, Consuls, Vice-Consuls and Consular Agents and sealed with the seal of office of the Consulate, shall be received as evidence in the United States and Italy." The Consular Convention had the standing of a treaty, and as such was part of "the supreme law of the land," by which "the judges in every state shall be bound." U. S. Const. art. 6. *Santovincenzo* v. *Egan*, 284 U. S. 30, 40. Treaties are not infrequently denominated conventions. For example, see 9 U. S. Sts. at Large, 902, 11 U. S. Sts. at Large, 587, *Hauenstein* v. *Lynham*, 100 U. S. 483; 8 U. S. Sts. at Large, 340, 11 U. S. Sts. at Large, 719, *Nielsen* v. *Johnson*, 279 U. S. 47; 39 U. S. Sts. at Large, 1702, *Missouri* v. *Holland*, 252 U. S. 416. See also *United States* v. *Belmont*, 301 U. S. 324. The documents in question must be treated as parts of the evidence before this court.

It is fairly to be inferred that no record of any civil cere-mony exists, although Italian law provides for such a record. There is no direct evidence of any civil ceremony, although some of the witnesses were present when the religious cere-mony was performed. There is no circumstantial evidence of any civil ceremony, except very brief cohabitation and considerable but not invariable subsequent recognition of the wife and child as such. Against this circumstantial evidence must be set the circumstances to the contrary, already recited, and in addition the recitals in the birth cer-tificate and the record of family status.

The weight of the evidence favors the view that no civil ceremony was performed, and consequently that Giuseppe Guidetti is not the lawful heir and next of kin of the intes-tate. The foregoing is the opinion of a majority of the court.

*Decree reversed.*
*Petition filed by Abdon Vergnani dismissed.*